**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. GARY S, KATZMANN, JUDGE**
-------------------------------------------------------------------- X
**SECOND NATURE DESIGNS LTD.,**                 :
                                                :
            **Plaintiff,**                      :
                                                :
            *v.*                                :        **No. 17-cv-00271**
                                                :
**UNITED STATES,**                              :
                                                :
            **Defendant.**                      :
-------------------------------------------------------------------- X

### <u>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO AMEND</u>

NEVILLE PETERSON LLP

John M. Peterson
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated:  February 18, 2022

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. ii

BACKGROUND ................................................................................................................2

ARGUMENT .....................................................................................................................3

I.  The Court Should Review Defendant's Motion Under USCIT R. 6(b)(1)(B) ..................3

II.  The Equities Weigh Heavily Against Granting the Government's Motion.......................4

  A.  The Government's Motion is Untimely. ...............................................................5

  B.  Plaintiff will Suffer Significant Prejudice if the Motion is Granted. .......................7

III.  Defendant Lacks a Cause of Action and its Counterclaim is Futile. ...................................9

  A.  Defendant's Counterclaim is Barred by the Finality of Liquidation Set Out in 19 U.S.C. § 1514(a). .......................................................................................9

  B.  Entry and Liquidation Process. ................................................................................9

  C.  Finality of Liquidation Pursuant to 19 U.S.C. § 1514(a)....................................11

  D.  Exceptions to the Finality of Liquidation Under 19 U.S.C. § 1514(a). ................13

    1.  "Unless a Protest is Filed in Accordance With This Section[.]" ..............13

    2.  "[A] Civil Action Contesting the Denial of a Protest, in Whole or in Part, is Commenced in the United States Court of International Trade in Accordance With Chapter 169 of Title 28 Within the Time Prescribed by Section 2636 of that Title."................................................................15

    3.  Penalty and Withheld Duty Actions Under 19 U.S.C. § 1592...................17

  E.  28 U.S.C. § 1583 is a Jurisdictional Grant and Creates No Cause of Action. ........20

IV.  Interpreting 28 U.S.C. § 1583 as Creating a Cause of Action in Favor of the Government Would Violate the Equal Protection Clause of the Constitution. .................25

CONCLUSION.................................................................................................................29

## **TABLE OF AUTHORITIES**

**Cases**

*3V Inc. v. United States*, 23 C.I.T. 1047 (1999)................................................................ 16

*Aegis Sec. Ins. Co. v. United States,* 422 F. Supp. 3d 1328 (Ct. Int'l Tr. 2019).................... 13, 18

*Allegheny Bradford Corp. v. United States*, 28 C.I.T. 603 (2004) ..................................... 19

*Apple Inc. v. United States*, 375 F. Supp. 3d 1288 (Ct. Int'l Tr. 2019), *aff'd*, 964 F.3d
 1087 (Fed Cir. 2020)................................................................................................. 16

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) .............................................................. 21, 22

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ................................................ 21, 22

*Bolling v. Sharpe,* 347 U.S. 497 (1954)................................................................... 26

*Bounds v. Smith*, 430 U.S. 817 (1977)................................................................... 27

*Chae v. Sec'y of the Treasury,* 518 F. Supp. 3d 1383 (Ct. Int'l Tr. 2021)...................... 5

*Davis v. Passman*, 442 U.S. 228 (1979) ................................................................ 24

*Diamond Sawblades Mfrs. Coalition v. United States*, 36 C.I.T. 515 (2012)................. 9

*Dollar Trading Corp. v. United States*, 67 Cust. Ct. 308 (1971)................................. 16

*DRK Photo v. McGraw-Hill Global Educ. Holdings, LLC*, 870 F.3d 978 (9th Cir. 2017) ........... 3

*duPont v. Southern,* 771 F.2d at 874 (5th Cir. 1985)................................................. 26

*Federal Election Comm'n v. Wisconsin Right to Life, Inc.,* 551 U.S. 449 (2007)................ 27

*FirstBank P.R. v. Misite,* 2018 U.S. Dist. LEXIS 135048 11 (D.V.I. 2018) .................... 3

*Fletcher v. United States*, 25 C.C.P.A. 195 (1937)................................................... 16

*Foman v. Davis,* 371 U.S. 178 (1962) ................................................................... 5

*Ford Motor Co. v. United States,* 19 C.I.T. 946 (1995).............................................. 8

*Former Emples. of Quality Fabricating, Inc.* v. United States, 28 C.I.T. 1061 (2004)........... 7, 8

*Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169 (11th Cir. 2017) ...................... 26

*Haig v. Agee*, 453 U.S. 280 (1981) ...................................................................... 28

*Hammond Lead Products Inc. v. United States*, 61 Cust. Ct. 137 (1968) ..................... 16

*Hernandez v. Mesa,* 140 S.Ct. 735 (2020)............................................................. 24

*Holmes v. Grubman,* 568 F.3d 329 (2d Cir. 2009) ................................................. 3

*Home Prods. Int'l v. United States*, 405 F. Supp 3d 1368 (Ct. Int'l Tr. 2019), *aff'd*, 846
 Fed Appx. 890 (Fed. Cir. 2021)................................................................................. 19

*Hylsa, S.A. de C.V.*, 31 C.I.T. 52 (2007)................................................................... 10

*Jarvis Clark II,* 739 F.2d 628 (Fed. Cir. 1984) ...................................................... 17

*Jarvis Clark Inc. v. United States*, 733 F.2d 878 (Fed. Cir. 1984) .......................... 2, 16

*Jesner v. Arab Bank PLC,* 138 S. Ct. 1386 (2018) ................................................. 24

*Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de, C.V.* 464 F3d 1339 (Fed.
 Cir. 2006)................................................................................................................... 5

*Lee v. Park*, 720 Fed. Appx. 663 (3d Cir. 2017)........................................................ 3

*Legatus v. Sebelius*, 901 F. Supp. 2d 980 (E.D. Mich. 2012)................................... 28

*Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307 (1976)............................. 27

*McKesson Corp. v. Div. of Alcoholic Bevs. & Tobacco,* 496 U.S. 48 (1990) ............... 26

*Mullin Indus. Diamond Corp. v. United States*, 53 Cust. Ct. 17 (1964)...................... 16

*Pressure Prods. Med. Supplies v. Greatbatch Ltd.*, 599 F.3d 1308 (Fed. Cir. 2010)............. 3, 7

*Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265 (1978).............................................. 28

*Rienzi & Son, Inc. v. United States*, 180 F. Supp. 3d 1349 (Ct. Int'l Tr. 2016)................. 4

*Saqr v. Univ. of Cincinnati,* 2019 U.S. Dist. LEXIS 26467 (S.D. Ohio 2019)................ 27

*Shinyei Corp. of America Inc. v. United States*, 355 F.3d 1297 (Fed. Cir. 2004)......................... 19

*Std. Furniture Mfg. Co. v. United States*, 36 C.I.T. 237 (2012) ..................................................... 27

*Stone Container Corp. v. United States*, 229 F.3d 1345 (Fed. Cir. 2000) ..................................... 27

*Tikal Distrib. Corp. v. United States*, 24 C.I.T. 149 (2000) .................................................. 20, 21

*Tokio Marine & Nichido Fire Ins. Co. v. Calabrese*, 2011 U.S. Dist. LEXIS 135987
    (E.D.N.Y 2011.)............................................................................................................................ 8

*Tomoegawa (U.S.A.), Inc. v. United States,* 15 C.I.T. 182 (1991)................................................. 5

*United States v. Active Frontier Inc.*, 2018 Ct. Int'l Tr. LEXIS 61 (2018) .................................. 18

*United States v. Country Flavor Co.*, 36 C.I.T. 378 (2012)........................................................... 18

*United States v. Ford Motor Co.*, 463 F.3d 1286 (Fed. Cir. 2006)................................................ 18

*United States v. Ford Motor Co.*, 497 F.3d 1331 (Fed. Cir. 2007)................................................ 19

*United States v. Inn Foods Inc.*, 560 F.3d 1338 (Fed. Cir. 2007)................................................. 18

*United States v. Tenacious Holdings Inc.,* 917 F. Supp. 2d 1322 (Ct. Int'l Tr. 2013) ................ 21

*W.A. Force & Co. v. United States*, 24 Cust. Ct. 140 (1950). ...................................................... 16

*W.A. Taylor & Co. v. United States*, 33 Cust. Ct. 246 (1954) ...................................................... 16

*Weinberger v. Wiesenfeld*, 420 U.S. 636 (1975)........................................................................... 26

*Woodward v. United States*, 871 F.2d 1068 (Fed. Cir. 1989)....................................................... 27

*Zenith Radio Corp. v. United States,* 710 F.2d 806 (Fed. Cir. 1983) .......................................... 10

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). .................................................................................... 25

**Statutes**

19 U.S.C. § 1484 .............................................................................................................................. 9

19 U.S.C. § 1500 ............................................................................................................................ 10

19 U.S.C. § 1501 ...................................................................................................................... 11, 14

19 U.S.C. § 1504 ............................................................................................................................ 11

19 U.S.C. § 1514 ..................................................................................................................... passim

19 U.S.C. § 1592 ..................................................................................................................... passim

28 U.S.C. § 1582 ............................................................................................................................ 18

28 U.S.C. § 1583 ..................................................................................................................... passim

28 U.S.C. § 2637 ............................................................................................................................ 22

28 U.S.C. § 2643 .............................................................................................................................. 2

**Other Authorities**

H. Rep. 96-1235, 96th Cong., 2d Sess. ......................................................................................... 23

*Hearings Before the Subcommittee on Monopolies and Commercial Law, Committee on
    the Judiciary, House of Representatives*, 96th Cong., 2d Sess. on H.R. 6394 (February
    13 and 28, 1980) ................................................................................................................. 22, 23

Note 2 to Chapter 6 of the HTSUS ................................................................................................. 9

USCIT R. 15 ................................................................................................................................. 3, 7

USCIT R. 6 ................................................................................................................................... 4, 7

**Constitutional Provisions**

U.S. Const. amend. V...................................................................................................................... 2

U.S. Const. amend. XIV . ......................................................................................................... 2, 25

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S, KATZMANN, JUDGE
-------------------------------------------------------------------- X
SECOND NATURE DESIGNS LTD.,                   :
                                              :
           Plaintiff,                         :
                                              :
     v.                                       :        No. 17-cv-00271
                                              :
UNITED STATES,                                :
                                              :
           Defendant.                         :
-------------------------------------------------------------------- X


### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO AMEND

In accordance with Rules 7 and 15 of the Rules of the United States Court of International Trade ("USCIT R."), plaintiff, Second Nature Designs Ltd. ("Second Nature"), hereby responds in opposition to the Motion to File an Amended Answer and a Supplemental Pleading Asserting a Counterclaim filed by defendant, United States (ECF 92). Specifically, the Government's proposed counterclaim—which asserts that certain dried botanicals are classifiable under subheading 6702.90.65 of the Harmonized Tariff Schedule of the United States ("HTSUS"), as "artificial flowers or fruit"—should be denied as untimely and prejudicial to Plaintiff, and because the proposed counterclaim is futile. As detailed herein, Defendant has not identified a basis for asserting its counterclaim; and, indeed the counterclaim is barred by the statutory finality of liquidation set out in Section 514(a) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1514(a).

Additionally, serious Constitutional concerns would arise were this Court to hold that importers who commence actions in this Court to challenge protest denials by U.S. Customs and Border Protection ("CBP" or "Customs"), also creates an independent right for the Government to bring its own action and disrupt the Section 514(a) finality of liquidation. Such a reading would deny importer-plaintiffs Equal Protection of the Laws, namely under 19 U.S.C. § 1514(a), in

violation of the Fifth and Fourteenth Amendments to the U.S. Constitution. The Court should deny the Government's Motion with prejudice.

## BACKGROUND

On April 12, 2018, the Government filed its Answer in this case, contesting Plaintiff's claim for classification of dried botanicals under subheading 0604.90.30, HTSUS. The Answer supported CBP's liquidated classification of the products under subheading 0604.90.60, HTSUS. *Almost four years later* in February of 2022—after the passing of the deadline for motions addressed to the pleadings; after the Government deposed Plaintiff's Rule 30(b)(6) witness; after *nine* amended scheduling orders; after numerous joint status reports; after the conclusion of lengthy discovery proceedings;[1] after moving for entry of a case management order; after entry of a case management order; and after the submission of a joint statement of material facts not in dispute—only then did the Government move for leave to file an amended answer and a supplemental pleading asserting a counterclaim against Plaintiff. The Government's approach to litigating this action cannot be permitted.

The single issue in this case is simple and straightforward, asking whether Plaintiff's dried botanicals—used for decorative purposes—cease to be classified as "dried or bleached" when subjected to additional operations (*e.g.,* dyeing, coating with glitter). CBP classified the subject merchandise in liquidation under subheading 0604.90.60, HTSUS—a decision which carries a statutory presumption of correctness. 28 U.S.C. § 2639(a).

---

[1] Plaintiff previously noted that the scope of discovery conducted by the Defendant in this action has extended far beyond the classification claims framed by the Complaint and Answer. This expansive discovery did not significantly touch upon 'Plaintiff's asserted classification, but was largely aimed at questioning Defendant's own liquidated classifications. This led Plaintiff to raise with the Court how much discovery a party must endure not to further its own claim in litigation, but to allow the Court to discharge its obligation under *Jarvis Clark Inc. v. United States*, 733 F.2d 873 (Fed. Cir. 1984), to determine the correct result by whatever means are appropriate. *See* ECF 39. The governing statute, 28 U.S.C. § 2643(b), empowers the Court to determine the best way to discharge its obligation if the Court is unable to determine the correct answer "on the basis of the evidence presented in any civil action." This suggests that the *Jarvis Clark* inquiry is to be guided by the Court *after* hearing the evidence in an action.

## ARGUMENT

**I.    The Court Should Review Defendant's Motion Under USCIT R. 6(b)(1)(B)**

This Court should conclude that the Government's motion is out of time because it violates the Court's first scheduling order of May 25, 2018 (ECF 17). This Order provided that "[a]ny motion regarding the pleadings or other preliminary matter will be filed by" September 7, 2018. *Id.* In the almost three-and-a-half years since, nine (9) consent or joint motions to amend the scheduling order have been docketed and granted (ECF 18, 20, 26, 28, 31, 34, 45, 62, 79), and a case management motion was docketed and granted (ECF 92, 93). The Government never sought to extend the deadline for filing motions addressed to the pleadings in any of these prior scheduling orders. Undeterred, the Government filed its motion in violation of the Court's May 25, 2018 Scheduling Order, seeking to amend its pleadings to assert a highly prejudicial counterclaim against Plaintiff. The Government does not appear to recognize or care that the deadline for it to file a motion to amend its pleadings passed years ago.

According to USCIT R. 15 the Court "should freely give leave [to amend a pleading] when justice so requires." However, according to the Fedeal Circuit in *Pressure Prods. Med. Supplies v. Greatbatch Ltd.,* "that is not the rule when filing an amended complaint would violate a scheduling order." 599 F.3d 1308, 1319 (Fed. Cir. 2010). Instead, "[t]he <u>more rigid standard of Rule 6(b) is applicable to motions filed after a scheduling order deadline has expired and requires a showing of good cause to file outside the deadline</u>." *Id.* (emphasis added); *see also, Lee v. Park*, 720 Fed. Appx. 663, 669 (3d Cir. 2017); *Holmes v. Grubman,* 568 F.3d 329, 334-35 (2d Cir. 2009)**;** *DRK Photo v. McGraw-Hill Global Educ. Holdings, LLC*, 870 F.3d 978, 989 (9th Cir. 2017)**;** *FirstBank P.R. v. Misite,* 2018 U.S. Dist. LEXIS 135048 at *11 (D.V.I. 2018).

The Court adopted this more rigid standard in *Rienzi & Son, Inc. v. United States*, 180 F. Supp. 3d 1349 (Ct. Int'l Tr. 2016), in a case where "plaintiff filed its motion [to amend] … more than 18 months after the deadline for 'any motions regarding the pleadings' established by the scheduling order in this case." *Id.* at 1353.

Here, the Court should consider the Government's Motion out of time, and review it under USCIT R. 6, which requires a party seeking an extension of time out of time to demonstrate "excusable neglect or circumstances beyond the control of the party." Of course, the Government's Motion makes no attempt to satisfy this showing. The plaintiff in *Rienzi,* similar to the Government here, "failed to even recognize the applicability of this rule in its motion. Instead, the Government simply asserts that the "court should grant [the] requested amendment because 'justice so requires.'" *Id.* The instant Motion contains no discussion of neglect nor of any circumstances beyond its control which could justify[2] the filing of its Motion in violation of the May 25, 2018 Scheduling Order, and in violation of USCIT R. 6.

The Government has violated the original scheduling order entered in this case (ECF 17) and therefore this Motion should be reviewed under the standard of "neglect or circumstances beyond the control of the party," as provided in USCIT R. 6, which the Government cannot satisfy. As explained herein, the Government's delay is inexcusable and therefore, the Court should deny the Motion.

## II.   The Equities Weigh Heavily Against Granting the Government's Motion.

In addition to the reasons discussed above, the Government's Motion should be denied because, contrary to the Government's assertions, the equities do not fall in its favor. "Leave to

---

[2] . Indeed, as detailed herein, the Government conducted discovery as to the classification it now wishes to assert more than three (3) years ago.

amend may be denied if the court finds that there has been <u>undue delay that would prejudice the nonmoving party</u>, that the <u>moving party has acted in bad faith</u>, or that the <u>amendment would be futile</u>." *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de, C.V.* 464 F3d. 1339, 1353, (Fed. Cir. 2006) (emphasis added); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

> **A.      The Government's Motion is Untimely.**

This Court noted in *Tomoegawa (U.S.A.), Inc. v. United States,* 15 C.I.T. 182, 186 (1991), "that [w]hether the Government's motion to amend is timely depends upon when the Government acquired knowledge of the facts and circumstances that form the basis of the counterclaims. It is the view of the court that, once the Government gained that knowledge, it had a duty to assert its counterclaims in a timely fashion." *Id.* at 186. *See also Chae v. Sec'y of the Treasury,* 518 F. Supp, 3d 1383, 1404 (Ct. Int'l Tr. 2021). In its Motion, Defendant asserts that it was not aware of the information necessary to assert a counterclaim until December 2021. On the contrary, the required information was in Defendant's possession no later than November 2018, if not earlier.

In November 2018, the Government deposed Steve Koning, the President and designated Rule 30(b)(6) witness of Second Nature, in Buffalo, New York. The Government asked numerous questions of Mr. Koning regarding the products it now seeks to assert a counterclaim on. Mr. Koning testified regarding *inter alia*: Deco Flowers Yellow, Item #16236, Deposition Transcript ("Dep. Tr.") at 37; the Pumpkin Root ball Mix, Item #40180, Dep. Tr. at 54; and Blossom Branch Natural, Item # 50230, Dep. Tr. at 43. See Exhibit ("Ex.") A. In addition, Mr. Koning testified about sola flowers and other sola products, Dep. Tr. at 41. See Ex. A. The Government plainly states in its motion that it was aware of its potential claims at this time. ("After deposing plaintiff's designated agent, it became clear that the subject merchandise consisted of vastly more varied styles than had been previously anticipated[.]" (ECF 92 at 4.)). These are the products the

Government now seeks to assert a counterclaim on; however, the facts laid out by Mr. Koning *more than three years ago* formed the basis of the counterclaim the Government now seeks to assert.

In addition, many identical samples and/or representative samples of the products at issue were sent to the Government long before December 2021. Plaintiff provided the Government with over one dozen boxes of samples in this litigation, all at its own expense. In February 2019 "Item No. 00696, Sola Berries Red Glitter - Consumer Pack" was sent to the Government. In April 2019 Plaintiff sent five (5) additional boxes of samples, which included *inter alia*: Item No. 00182, Deck The Halls Champagne Glitter – Bouquet"; "Item No. 57170, Trick or Treat – Bouquet"; "Item No. 40180, Pumpkin / Root Ball Mix Orange - Jumbo Bag"; and "Item No. 51670, Root Ball Bouquet Item. A sample of "Item No. 03347, Panchu Bouquet" was provided in July 2019. A sample of "Item No. 16236, Deco Flowers Yellow - Value Pack," and "Item No. 3229, Pumpkins - Stemmed Orange -Consumer Pack" were provided in August 2020.

Finally, numerous spreadsheets were provided to Defendant containing Second Nature's "recipes" for the products at issue. Specifically, on January 2, 2020, the Government was given information concerning *inter alia* "Item No. 03347, Panchu Bouquet"; "Item No. 02831, Fall Harvest Bouquet"; "Item No. 00182, Deck the Halls Champagne Glitter- Bouquet"; and "Item No. 40180, Pumpkin/Root Ball Mix." All of the foregoing provisions supplied the Government with more than enough information for which it could determine to assert its counterclaim well before the entry of the joint case management motion and the close of discovery.

Because the Government possessed requisite information to assert its counterclaim years ago, its February 2022 Motion to Amend is inexcusably untimely. "At some point in the course of litigation the court must acknowledge that an unjustifiable delay preceding a motion to amend

'goes beyond excusable neglect, even when there is no evidence of bad faith or dilatory motive.'" *Former Emples. of Quality Fabricating, Inc.* v. United States, 28 C.I.T. 1061, 1069 (2004). The Government was aware of its supposed counterclaims in November 2018 when it deposed Second Nature's 30(b)(6) witness. By November 2018, the Government had in its possession more than enough information to develop its counterclaim theory. Defendant was well aware its proposed alternative classifications for the next three-and-a-half years and was not afraid to raise this issue before this Court or to plaintiff. .

In *Former Emples. of Quality Fabricating, supra,* the Court observed that "had the Defendant any legitimate questions about the scope of Plaintiffs' … Complaint, that issue could have been resolved at any time in the past year by a Motion for a More Definite Statement. While there is no indication of bad faith on the part of the Defendant, nonetheless the filings to date bear the hallmarks of tactics of delay." *Id.* The Government's position regarding its counterclaims in this case similarly "bear the hallmarks of tactics of delay." The Government could have and should have acted during this case's extended discovery period. The Government cannot justify its year's long delay under USCIT Rules 6 or 15, its Motion must be denied.

To attempt to send this case back to the pleadings stage after more than 4 years and after dispositive motion briefing is scheduled would be chaotic and prejudicial to plaintiff. The motion should be denied.

**B.      Plaintiff will Suffer Significant Prejudice if the Motion is Granted.**

The Court must deny the Government's Motion because Plaintiff's inability to take relevant discovery**,** in addition to the further delay in resolving this case**,** significantly prejudice**s** Plaintiff. **"**Prejudice to the nonmoving party may be sufficient to deny leave to amend.**"** *Pressure Prods. Med. Supplies v. Greatbatch Ltd.*, 599 F.3d 1308, 1320 (Fed. Cir. 2010). Case law asks

whether the delay in filing a motion to amend the pleadings increases the **r**isk that the opposing party will lack an adequate opportunity to prepare its case concerning the new issues raised by the amended pleading. *F*ord Motor Co. v. United States, 19 C.I.T. 946, 956 (1995). **"**Prejudice tends to increase with delay.**"** *Tokio Marine & Nichido Fire Ins. Co. v. Calabrese*, 2011 U.S. Dist. LEXIS 135987, *24 (E.D.N.Y 2011.) Since the Government waited until the end **of** the discovery period, and until after parties had filed a joint statement of fact (ECF 91-1) plaintiff will face prejudice if defendant is now permitted to send this case back to the pleading stage after four years of litigation.

The timing of the Government**'**s motion to amend will greatly prejudice plaintiff.  With the entry of a case management order, Plaintiff should be free to prepare its motion for summary judgment based on the agreed upon statement of fact. In addition, Plaintiff will be unable to take discovery from the defendant regarding its newly (*i.e.,* underline>untimely</underline) asserted claims. As this Court noted in *Former Emples. of Quality Fabricating:*

> Plaintiffs may also show undue prejudice as a result of the fact that the amendments that the movant proposes substantially change the theory of the case or would make trial far more complicated and lengthy for the plaintiff, and that the added time and expense that would have to be incurred countering those new claims could be considered an appropriate prejudicial basis for denying a motion**.**

28 C.I.T. at 1071 (2004). As a result of the Government's tardy Motion, Plaintiff, after years of litigation has now been forced to devote its resources responding to this Motion when it should be preparing its summary judgment motion. After years of litigation "[t]he matter before the court is ripe and ready for determination and any additional time consumed by adjudication of this motion materially prejudices the Plaintiffs." *Former Emples. of Quality Fabricating,* 28 C.I.T. 1061, 1071 (2004). As such, the Motion must be denied.

**III.** **Defendant Lacks a Cause of Action and its Counterclaim is Futile.**

In addition to the other factors considered, whether the amendment would be futile is a factor which must be considered by this Court. "The real question on futility is best measured on the basis of whether the proposed amendments would survive a motion to dismiss or for summary judgment." *Diamond Sawblades Mfrs. Coalition v. United States*, 36 C.I.T. 515, 519 (2012). Plaintiff submits that the counterclaim would not survive a motion to dismiss because Defendant has failed to identify a cause of action against Plaintiff, and because the allowance of the counterclaim would violate the equal protection clause of the Constitution.[3]

**A.** **Defendant's Counterclaim is Barred by the Finality of Liquidation Set Out in 19 U.S.C. § 1514(a).**

Defendant cannot plausibly plead a cause of action against Plaintiff to recover additional duties, since its proposed counterclaim is barred by the doctrine of finality of liquidation, as set forth in Section 514(a) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1514(a). Defendant has not identified any basis for it to assert a cause of action for recovery of more duties than it assessed in liquidation. Indeed, the Government's proposed counterclaims are barred by the finality of liquidation rule set out in 19 U.S.C. § 1514(a), and do not fall within any identified exception to said finality of liquidation.

**B.** **Entry and Liquidation Process.**

Section 484 of the Tariff Act of 1930, as amended 19 U.S.C. § 1484, requires the importer of record, using reasonable care, to make entry of merchandise imported into the United States.

---

[3] Plaintiff also notes that under the application of Note 2 to Chapter 6 of the HTSUS, Defendant's counterclaim is futile. Note 2 provides:

Any reference in heading 0603 or 0604 to goods of any kind shall be construed as including a reference to bouquets, floral baskets, wreaths and similar articles made wholly or partly of goods of that kind, account not being taken of accessories of other materials. However, these headings do not apply to collages or similar decorative plaques of heading 9701.

9

The consumption entry must, *inter alia,* describe the goods and their country of origin, assert a classification for the goods under the HTSUS, declare a dutiable value, and be accompanied by the deposit of estimated duties with Customs.

Section 500 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1500, sets out the procedures for CBP to ascertain the correct classification, value and rate and amount of duty on goods covered by an entry, providing:

> The Customs Service shall, under rules and regulations prescribed by the Secretary—
>
> (a) fix the final appraisement of merchandise by ascertaining or estimating the value thereof, under section 1401a of this title, by all reasonable ways and means in his power, any statement of cost or costs of production in any invoice, affidavit, declaration, other document to the contrary notwithstanding;
>
> (b) fix the final classification and rate of duty applicable to such merchandise;
>
> (c) fix the final amount of duty to be paid on such merchandise and determine any increased or additional duties, taxes, and fees due or any excess of duties, taxes, and fees deposited;
>
> (d) liquidate the entry and reconciliation, if any, of such merchandise; and
>
> (e) give or transmit, pursuant to an electronic data interchange system, notice of such liquidation to the importer, his consignee, or agent in such form and manner as the Secretary shall by regulation prescribe.

Thus, "Liquidation" of an entry is the final determination by CBP regarding the classification, appraised value, and rate and amount of duty applicable to the entry in question. *Zenith Radio Corp. v. United States,* 710 F.2d 806, 810 (Fed. Cir. 1983); *Hylsa, S.A. de C.V.*, 31 C.I.T. 52, 53 n.1 (2007).

The law establishes that CBP has up to one (1) year from the date of the entry (or withdrawal from warehouse, or reconciliation) to "liquidate" the import transaction; if CBP fails to act within that time, the entry is "deemed liquidated" at the classification, rate and appraised

value asserted by the importer in its entry papers. 19 U.S.C. § 1504(a). CBP may—when for instance it requires additional information necessary to liquidate the entry, or when the importer requests and shows good cause therefor—"extend" liquidation of the entry for as many as three (3) one-year periods. 19 U.S.C. § 1504(b). This allows CBP as much as four (4) years to liquidate an entry of merchandise.

Section 501 of the Tariff Act, 19 U.S.C. § 1501, allows CBP to voluntarily "reliquidate" an entry within ninety (90) days of the original liquidation. Here, CBP did not timely act to reliquidate any of the entries at bar.

### C.    Finality of Liquidation Pursuant to 19 U.S.C. § 1514(a).

Section 514(a) of the Tariff Act provides that liquidations and reliquidations become final as to both the importer and CBP officers unless certain actions are taken within 180 days after notice of the liquidation or reliquidation is given. The statute provides:

**Sec. 1514. Protest against decisions of Customs Service.**

(a) Finality of decisions; return of papers

> Except as provided in subsection (b) of this section,[4] section 1501 of this title (relating to voluntary reliquidations), section 1516 of this title (relating to petitions by domestic interested parties), section 1520 of this title (relating to refunds), and section 6501 of title 26 (but only with respect to taxes imposed under chapters 51 and 52 of such title[5]), any clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in an electronic transmission, adverse to the importer, in any entry, liquidation, or reliquidation, and, decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to—
>
> > (1) the appraised value of merchandise;

---

[4] Section 514(b) of the Tariff Act relates to certain decisions of the Commerce Department in antidumping and countervailing duty proceedings which are not at issue here.

[5] Section 516 of the Tariff Act, relating to "domestic interested party" petitions, Section 520 of the Act relating to refunds, and the provisions of the Internal Revenue Code identified in Section 514(a) are not at issue in this action.

(2) the classification and rate and amount of duties chargeable;

(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

(4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;

(5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof, including the liquidation of an entry, pursuant to either section 1500 of this title or section 1504 of this title;

(6) the refusal to pay a claim for drawback; or

(7) the refusal to reliquidate an entry under subsection (d) of section 1520 of this title;

**shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of title 28 within the time prescribed by section 2636 of that title**. When a judgment or order of the United States Court of International Trade has become final, the papers transmitted shall be returned, together with a copy of the judgment or order to the Customs Service, which shall take action accordingly.

19 U.S.C. § 1514 (emphasis added). Thus, liquidation decisions made in accordance with Section 514(a)—such as the liquidations made with respect to Plaintiff's merchandise at bar—are "final and conclusive upon all persons (including the United States and any officer thereof)." *Id*.

There are two exceptions to the Section 514(a) finality of liquidation: (i) the filing of a protest; and (ii) the filing by an importer of an action in this Court to challenge the denial of a protest, in whole or part. Neither of these exceptions provide the Government with a cause of action to recover duties over and above those assessed by CBP in liquidation. A separate provision, set out in Section 592 of the Tariff Act, 19 U.S.C. § 1592(d), *would* empower the Government to

12

seek recovery of duties over and beyond those assessed in liquidation,[6] but only when the subject entry was effected by means of false statements or practices—*i.e.,* there must be an underlying Section 592(a) violation. Section 592(d) has not been invoked by the Government here and therefore provides no support for its Motion.

**D.      Exceptions to the Finality of Liquidation Under 19 U.S.C. § 1514(a).**

Examination of the statutory exceptions to the Section 514(a) finality of liquidation indicates that none apply; and therefore the Government has no cause of action for the counterclaim it seeks to assert . For good order's sake, we consider the exceptions separately below.

**1.      "Unless a Protest is Filed in Accordance With This Section[.]"**

The timely filing of a protest under 19 U.S.C. § 1514(a) constitutes an exception to the finality of liquidation rule under that statute. However, the protest remedy is a limited one, available only to private parties,[7] and available only to seek refunds of duties assessed in liquidation.

Section 515 of the Tariff Act of 1930, 19 U.S.C. § 1515, prescribes the actions to be taken by CBP officer with respect to protests, providing (emphasis added):

---

[6] *See e.g., United States v. Aegis Sec. Ins. Co.*, 422 F. Supp. 3d 1328, 1334 n.2 (Ct. Int'l Tr. 2019).

[7] Thus, Section 174.12 of the Customs Regulations, 19 C.F.R. § 174.12, provides:

§ 174.12   Filing of protests.
(a) By whom filed. Protests may be filed by:
     (1) The importer or consignee shown on the entry papers, or their sureties;
     (2) Any person paying or receiving a refund of any charge or exaction;
     (3) Any person seeking entry or delivery;
     (4) Any person filing a claim for drawback;
     (5) With respect to a determination of origin under subpart G of part 181 of this chapter, any exporter or producer of the merchandise subject to that determination, if the exporter or producer completed and signed a Certificate of Origin covering the merchandise as provided for in §181.11(a) of this chapter; or
     (6) Any authorized agent of any of the persons described in paragraphs (a) (1) through (5) of this section, subject to the provisions of §174.3.

Unless a request for an accelerated disposition of a protest is filed in accordance with subsection (b) of this section the appropriate customs officer, within two years from the date a protest was filed in accordance with section 1514 of this title, shall review the protest and **shall allow or deny such protest in whole or in part**. Thereafter, any duties, charge, or exaction found to have been assessed or collected in excess shall be remitted or refunded and any drawback found due shall be paid. Upon the request of the protesting party, filed within the time allowed for the filing of a protest under section 1514 of this title, a protest may be subject to further review by another appropriate customs officer, under the circumstances and in the form and manner that may be prescribed by the Secretary in regulations, but subject to the two-year limitation prescribed in the first sentence of this subsection. Within 30 days from the date an application for further review is filed, the appropriate customs officer shall allow or deny the application and, if allowed, the protest shall be forwarded to the customs officer who will be conducting the further review. Notice of the denial of any protest shall be mailed in the form and manner prescribed by the Secretary. Such notice shall include a statement of the reasons for the denial, as well as a statement informing the protesting party of his right to file a civil action contesting the denial of a protest under section 1514 of this title.

Thus, CBP's rights and powers in the event of the filing of a protest are limited: the agency can either (i) allow the protest, in which case "any duties, charges, or exactions found to have been assessed or collected in excess shall be remitted or refunded"; or it can (ii) deny the protest, in which case it leaves its liquidation decision intact and advises the protestant of its right to file an action in this Court contesting the denial of its protest. Nothing in the protest statute empowers CBP to change its liquidation decision otherwise than as prayed in the protest. Likewise, Section 515 provides no authorization for the Government to substitute a new decision in litigation for the official liquidation decision of CBP, nor to demand increased or additional duties from the protestant, once the 90-day reliquidation period set out in 19 U.S.C. § 1501 has passed.

While the filing of a protest provides a basis for unsetting the finality of liquidation of an entry under Section 514(a), such exception to the finality of liquidation nowhere grants the Government a cause of action to seek additional duties from the importer. There may be a downward departure from the liquidated assessment, as prayed in the protest, but CBP is granted

14

no power, authority or cause of action to make an upward departure from the liquidated assessment.

2.    **"[A] Civil Action Contesting the Denial of a Protest, in Whole or in Part, is Commenced in the United States Court of International Trade in Accordance With Chapter 169 of Title 28 Within the Time Prescribed by Section 2636 of that Title."**

The second Section 514(a) exception to the finality of liquidation arises where an action is filed in this Court to contest the denial of a protest. Section 515(a) of the Tariff Act indicates that where CBP denies a protest in whole or part, its notice of the decision to the protesting party must include "a statement informing the protesting party of his **right** to file a civil action contesting the denial of a protest under section 1514 of this title." (Emphasis added). The right to file such a 28 U.S.C. § 1581(a) action belongs solely to the protesting party, which as noted above, is always a private party. Nothing in this statute provides the Government a cause of action to pursue a claim for *more* duties than CBP assessed in liquidation.

The action contemplated by the second exception to the finality of liquidation—*i.e.*, administrative protest—is one over which this Court assumes jurisdiction pursuant to 28 U.S.C. § 1581(a). The remedies available are provided exclusively to the private protesting party, and while the Court may order any form of relief suitable to the action, the principal, almost universal, form of relief granted to a successful plaintiff in a § 1581(a) action is an order directing CBP to reliquidate the entries with a refund of liquidated duties, taxes and charges collected in excess. Nothing in Section 515 provides CBP with a cause of action to seek additional duties over and above those assessed in liquidation.

Indeed, the *sine qua non* of a protest denial action commenced pursuant to 19 U.S.C § 1515 and 28 U.S.C. § 1581(a) is the recovery, by a private plaintiff, of excess monies paid to the Government. This Court has held that a plaintiff does not state a justiciable "case in controversy

15

in a protest case unless it is seeking monetary relief in the form of a refund of duties. *See e.g., 3V Inc. v. United States*, 23 C.I.T. 1047, 1049-52 (1999); *see also Apple Inc. v. United States*, 375 F. Supp. 3d 1288 (Ct. Int'l Tr. 2019), *aff'd*, 964 F.3d 1087 (Fed Cir. 2020).

The Courts have also ruled that, in a protest case, a rate of duty may not be protested as being too low. This rule was established in *Fletcher v. United States*, 25 C.C.P.A. 195 (1937), where the appellate court held:

> It is reasonable to conclude from all the facts heretofore cited that Congress at no time since the enactment of the Tariff Act of 1930 intended that an importer might protest a rate of duty as being too low and certainly its amendment of the Tariff Act of 1930 in the manner above stated would not suggest that a right existed in an American producer to import goods and then challenge the correctness of a lower rate of duty than that which is claimed to be proper.

*Id.* at 200. This rule has been repeatedly acknowledged. *See e.g*., *Dollar Trading Corp. v. United States*, 67 Cust. Ct. 308, 315 (1971); *Hammond Lead Products Inc. v. United States*, 61 Cust. Ct. 137, 142 n.5 (1968); *Mullin Indus. Diamond Corp. v. United States*, 53 Cust. Ct. 17, 20 (1964); *W.A. Taylor & Co. v. United States*, 33 Cust. Ct. 246, 249-250 (1954); *W.A. Force & Co. v. United States*, 24 Cust. Ct. 140, 145 (1950).

Simply put, the Government lacks standing to bring a protest denial action, and nowhere (other than in Sections 501 and 592 of the Tariff Act) does the law provide CBP with a power or cause of action to challenge or alter its own liquidation decision, or to demand the payment of additional monies.[8] While this Court has an obligation under *Jarvis Clark Inc. v. United States*, 733 F.2d 878 (Fed. Cir. 1984) to find the "correct" result, even if not advocated by the parties, this does not mean that a judgment would be entered for the Government in the event the correct result was found to be a classification of appraisement carrying a higher duty assessment than in

---

[8] While a "domestic interested party" may file a petition with CBP and thereafter file a "domestic interested party protest" in this court, *see* 19 U.S.C. § 1516, 28 U.S.C. § 1581(b), these statutes do not grant a cause of action to the Government.

liquidation. Indeed, as the Federal Circuit indicated in its decision denying reconsideration of *Jarvis Clark*, the rule was intended to provide decisions that were useful for importers and the Government in the treatment of *future transactions*. *Jarvis Clark II,* 739 F.2d 628 (Fed. Cir. 1984)). *Jarvis Clark* eliminated the "dual burden of proof" that once was imposed on protestants; while it authorized the courts to issue declaratory judgments proclaiming the correct classification of merchandise, as a guide to importers in *future transactions*, it did not confer on the Government a new cause of action to recover monies beyond those previously assessed in liquidation (and required to be paid by the importer as a condition of bringing suit).

Thus, the second exception to finality of liquidation set out in 19 U.S.C. § 1514(a)—the bringing of suit to challenge CBP's denial of a protest—does not provide the Government with a cause of action to seek to collect from the Plaintiff duties in excess of those assessed at liquidation.

### 3.    Penalty and Withheld Duty Actions Under 19 U.S.C. § 1592.

One exception to the finality of liquidation of 19 U.S.C. § 1514(a) exists in Section 592 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1592, which provides for the assessment of civil penalties, and recovery of "withheld duties" in cases where an importer or other person has made entry of merchandise by means of false and material statements or actions, whether by negligence, gross negligence or intentional fraud. However, Section 592 does not empower the Government unilaterally to set aside a liquidation or assess additional duties. The power to order payment of additional duties in such cases rests with this Court.

Section 592(d) of the Act provides an exception to the 19 U.S.C. § 1514(a) finality of liquidation rule for the collection of  "withheld duties" resulting from violation of the proscriptions set out in Section 592(a), providing:

**(d) Deprivation of lawful duties, taxes, or fees**

> **Notwithstanding section 1514 of this title**, if the United States has been deprived of lawful duties, taxes, or fees as a result of a violation of subsection (a) of this section, the Customs Service shall require that such lawful duties, taxes, and fees be restored, whether or not a monetary penalty is assessed.

19 U.S.C. § 1592(d) (emphasis added).

Neither the statute nor CBP's regulations specify the manner in which the lawful duties, taxes or fees "shall be restored." There is no statutory authority to re-liquidate entries in such cases, and the Federal Circuit has suggested that a demand for restoration of such duties does not constitute a reliquidation against which a protest might be lodged. *See United States v. Ford Motor Co.*, 463 F.3d 1286, 1297 (Fed. Cir. 2006). But Section 592(d) clearly does give CBP a cause of action to collect additional duties notwithstanding the finality of liquidation in Section 514(a).[9] Actions to recover Section 592(a) penalties and Section 592(d) withheld duties are entertained by this Court under 28 U.S.C. § 1582(1) and (3).[10]

The Court reviews *de novo* the existence of a Section 592(a) violation, and the amount of penalty to be assessed.[11] It will also review *de novo* the amount of "withheld duties" to be assessed, *see United States v. Country Flavor Co.,* 36 C.I.T. 378, 382-83 (2012), but has held that when a violation of Section 592(a) is shown, it has no discretion regarding the award of "withheld duties" to the Government. *Id; see also United States v. Inn Foods Inc.*, 560 F.3d 1338, 1348 (Fed. Cir. 2007).

---

[9] In *Aegis Sec. Ins. Co. v. United States,* 422 F. Supp. 3d 1328, 1334 n.2 (Ct. Int'l Tr. 2019), the court noted that the 19 U.S.C. § 1514(a) finality of liquidations does not bar an action for collection of unpaid or withheld duties.

[10] 28 U.S.C. § 1582 provides:

> The Court of International Trade shall have exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States—
> (1) to recover a civil penalty under section 592, 593A, 641(b)(6), 641(d)(2)(A), 704(i)(2), or 734(i)(2) of the Tariff Act of 1930;
> (2) to recover upon a bond relating to the importation of merchandise required by the laws of the United States or by the Secretary of the Treasury; or
> (3) to recover customs duties.

[11] *See e.g., United States v. Active Frontier Inc.*, 2018 Ct. Int'l Tr. LEXIS 61, *7-8 (2018).

However, while Section 592(d) provides an exception to the Section 514(a) finality of liquidation rule,[12] and provides the Government with a cause of action to recover additional duties irrespective of the statutory finality of liquidation, the Government's cause of action accrues only where the importer is alleged to have made false statements, or engaged in false practices, in the entry of merchandise. 19 U.S.C. § 1592(a). Defendant's counterclaim does not assert any Section 592 violations by Plaintiff, nor does it plead any of the elements or requisite facts to support a Section 592(a) violation claim. The applicable statute of limitations for asserting a Section 592 claim, 19 U.S.C. § 1621, has likely run as to all of the entries at bar in this case.

The courts have also recognized that 19 U.S.C. § 1514(a) provides for finality with respect to CBP determinations and does not deprive this Court of authority to correct errors made by the Commerce Department—*e.g.,* the issuance of incorrect antidumping or countervailing duty liquidation instructions. *Shinyei Corp. of America Inc. v. United States*, 355 F.3d 1297 (Fed. Cir. 2004) ("The statute's discussion of finality relates to decisions of Customs. Indeed the very existence of section 1514 suggests that Congress recognized the necessity of providing relief in situations where errors occurred."). *Id.* at 1311. Likewise, Section 514(a) finality will not deprive this Court of its power to cure violations of court orders. *Allegheny Bradford Corp. v. United States*, 28 C.I.T. 603, 610 (2004); *see also e.g., Home Prods. Int'l v. United States*, 405 F. Supp 3d 1368, 1373 (Ct. Int'l Tr. 2019), *aff'd*, 846 Fed Appx. 890 (Fed. Cir. 2021). None of these circumstances are implicated here.

This returns us to the original question posed: what cause of action gives rise to the counterclaim which the Government has asserted in this case? None has been identified and,

---

[12] In certain cases, finality of liquidation can bar recovery of withheld duties. See, e.g., *United States v. Ford Motor Co.*, 497 F.3d 1331, 1338 (Fed. Cir. 2007) (withheld duties not recoverable under §592(d) where CBP allowed entries to be deemed liquidated by operation of law).

Plaintiff contends, none exists. For that reason, Plaintiff submits that the Government's Motion must be denied as futile.

**E.    28 U.S.C. § 1583 is a Jurisdictional Grant and Creates No Cause of Action.**

Finally, while this Court has jurisdiction over actions brought to assert counterclaims under 28 U.S.C. § 1583, that statute does not grant Defendant a cause of action which would justify its counterclaim. Section 1583 provides:

> In any civil action in the Court of International Trade, the court shall have exclusive jurisdiction to render judgment upon any counterclaim, cross-claim, or third-party action of any party, if (1) such claim or action involves the imported merchandise that is the subject matter of such civil action, or (2) such claim or action is to recover upon a bond or customs duties relating to such merchandise.

As the language indicates, Section 1583 is merely a grant of subject matter jurisdiction to this Court and does nothing to create a cause of action in any party. A party seeking to invoke this Court's counterclaim jurisdiction must demonstrate a basis for the cause of action or claim it seeks to raise by way of counterclaim *Tikal Distrib. Corp. v. United States*, 24 C.I.T. 149, 156 (2000).

Again, this begets the provenance of the cause of action which CBP is relying on to bring its counterclaim in this case. None has been identified. Neither the filing of the protest, nor the filing of Plaintiff's Complaint in this action, imbue Defendant with a cause of action to seek additional duties here. The provisions of 19 U.S.C. § 1592(d) do not apply here, and have not been invoked. No other statutory provision empowering CBP to seek the collection of duties in addition to those assessed at liquidation grants CBP such a cause of action.

Indeed, this Court, in *Tikal Distrib. Corp. v. United States*, 24 C.I.T. 149 (2000) noted that the existence of this Court's counterclaim jurisdiction does not confer a right of action to bring a counterclaim nor set aside the finality of liquidation set out in 19 U.S.C. § 1514(a):

> The legislative history of proposed § 1583 shows that counterclaim jurisdiction was conferred on the court to remedy the situation in existing law where if the court

20

found Customs' appraisement incorrect, the court could not sustain an appraised value claimed by the Government than was different from that claimed by the plaintiff (i.e., higher than that claimed by plaintiff or even the original appraised value), and could only dismiss the action without requiring the plaintiff to pay any additional duties. Under § 1583, the court would have jurisdiction to enter a judgment against plaintiff for additional customs duties if the counterclaim involves the imported merchandise that is the subject matter of the civil action. See H.R. Rep. No. 96-1235, 96th Cong., 2d Sess., p. 49 (Aug. 20, 1980). **However, there is no suggestion by either the language of § 1583 or its legislative history that jurisdiction over a counterclaim to collect a greater sum of duties than that claimed by plaintiff or provided by the original liquidation of the entry is independent of whether the liquidation of a particular entry became final and conclusive or whether the court has jurisdiction of the civil action involving the particular entry and imported merchandise.** *See* 19 U.S.C. § 1514(a).

Although limited, Customs has independent remedies to reliquidate entries, see 19 U.S.C. § 1501 covering voluntary reliquidations, and recover duty assessments, see 28 U.S.C. § 1582 (3) providing the court jurisdiction over civil actions commenced by the United States.

24 C.I.T. at 156 (emphasis added).

While this Court has jurisdiction to hear counterclaims brought by any party, including the Government, a counterclaim, to be plausible, must show whence its cause of action arises. *See Ashcroft v. Iqbal,* 556 U.S. 662, 677-678 (2009)*; Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)*.* As noted in *Tikal,* the addition of counterclaim jurisdiction in the CIT via the Customs Courts Act of 1980 did not in any way expand the exceptions to the finality of liquidation set out in 19 U.S.C. § 1514(a). *Tikal Distrib. Corp.,* 24 C.I.T. 149, 156 (2000).

Certainly, where the Government is involved in litigation before this Court, there are situations where counterclaims could be brought. For instance, the Government could bring a counterclaim to collect 19 U.S.C. § 1592(d) "withheld duties" claim in a protest denial action commenced by a plaintiff involving the same merchandise—although this court held, in *United States v. Tenacious Holdings Inc.,* 917 F. Supp. 2d 1322, 22-23 (Ct. Int'l Tr. 2013), that while such a claim could be asserted as a counterclaim, it was not a compulsory counterclaim and could be

pursued as a separate action. A plaintiff in a protest denial action who failed to pay all liquidated duties, taxes and fees before commencing action, as required by 28 U.S.C. § 2637(a) might be the subject of a Government motion to dismiss its action for lack of subject matter jurisdiction, and a counterclaim to collect the liquidated but unpaid duties.[13]

Many different causes of action might give rise to counterclaims in this Court. But the Government has failed to identify the source of the counterclaim cause of action it asserts here. Accordingly, the counterclaim must be dismissed for failure to state a claim on which relief may be granted. The counterclaim does not satisfy the "plausibility" requirements of *Iqbal* and *Twombly, supra.*

The legislative history of the Customs Courts Act of 1980 shows that the extent of this Court's 28 U.S.C. § 1583 counterclaim jurisdiction was intensely debated before ultimately being resolved through a narrowing compromise. Initially, the CIT's counterclaim jurisdiction was to be broad enough to entertain any claim arising out of cases pending in the Court, regardless of whether these cases were identical to the case in which the counterclaim was to be asserted. This was viewed as overbroad and likely to have a chilling effect on plaintiffs' willingness to bring Customs disputes to Court. Customs Court Chief Judge Re (who would become the first Chief Judge of the CIT), addressing the counterclaim proposal in testimony before the House Judiciary Committee subcommittee on Monopolies and Commercial Law, said:

> At some point there could be a chilling effect on bringing of the suits; and I can see why plaintiffs would not like that. I would not want to chill the right of the plaintiff to sue in the court.[14]

---

[13] Of course, in such an action, the government's right to the duties counterclaimed for would have accrued upon liquidation of the subject entries. That is not the case presented here.

[14] *Hearings Before the Subcommittee on Monopolies and Commercial Law, Committee on the Judiciary, House of Representatives*, 96th Cong., 2d Sess. on H.R. 6394 (February 13 and 28, 1980), Serial H. 521-14 at p. 15.

While some favored broad counterclaim jurisdiction, suggesting that it would promote consolidation of actions,[15] and the Justice Department felt that the CIT's counterclaim jurisdiction should be as broad as that of the Court of Claims (which allowed counterclaims beyond the bounds of the original suit),[16] industry commentators suggested that the counterclaim jurisdiction should be limited to the particular import transaction before the court,[17] if not made unnecessary due to the fact that all liquidated duties, taxes and fees were required to be paid before commencement of an action in the Court.[18] Andrew P. Vance, testifying for the Association of the Customs Bar, noted that[19]:

> … the inequalities of the one-sided counterclaim provisions will be seen as threats to be realized against any importer who seemingly has the audacity to take on government officials whom he believes to be acting contrary to law.

The House Report accompanying passage of the Customs Courts Act indicates that the scope of the counterclaim jurisdiction granted the CIT was narrowed in the final legislation:

> After extensive discussion, the Subcommittee adopted an amendment limiting the government's counterclaim to "the imported merchandise." This amendment strikes a compromise between the need of the government to recover the proper amount of import duties and the exposure of the importer to additional liability.[20]

What is especially noteworthy is that the entire discussion leading to enactment of the Customs Courts Act of 1980 relates to the scope of the *grant of counterclaim jurisdiction* to be given the Court. <u>At no point did Congress create any new right of action for unpaid duties in favor of the Government</u>. Nor did Congress amend the scope of the finality of liquidation found in 19

---

[15] *Id.* at p. 71 (Mr. Davis).

[16] *Id.* at p. 71 (Mr. Cohen).

[17] *Id.* at p. 106 (John B. Pellegrini, speaking for the American Importers Association).

[18] *Id.* at p. 129 (Mr. Melahn).

[19] *Id.* at 188. (Mr. Vance).

[20] H. Rep. 96-1235, 96th Cong., 2d Sess. at 60-61.

U.S.C. § 1514(a). If the Government wishes to assert a counterclaim in this action, it must identify

the law which gives rises to that cause of action. It has not done so in its counterclaim pleading.

We submit that it cannot do so.

Courts have rigorously noted the distinction between grants to courts of jurisdiction to hear

actions and grants to parties to bring suit. *See e.g.*, *Klobel v. Royal Dutch Petro Co*., 569 U.S. 108

(2013) (noting that Alien Tort Statute provides Federal courts with jurisdiction to hear certain

claims, but does not expressly provide any causes of action); *see also e.g.*, *Mwani v. Al Qaeda*,

2004 U.S. Dist. LEXIS 135599 (D.D.C. 2014). A litigant invoking the court's jurisdiction must

point to some statutory of Federal common law basis for the cause of action asserted.

Nor may the Court infer a cause of action in favor of the Government's counterclaim. As

noted in *Davis v. Passman*, 442 U.S. 228, 240 n.18 (1979), to ask whether a particular plaintiff has

a cause of action is to ask whether he is a "member of a class of litigants that may, as a matter of

law, appropriately invoke the power of the court.." The *Davis v. Passman* Court further noted that

the "question of who may enforce a statutory right is fundamentally different from the question of

who may protect a right that is protected by the Constitution." *Id*. at 241.

The Supreme Court in recent years has cautioned against inferring causes of action in cases

where the legislature has not expressly provided for them. Thus, in *Hernandez v. Mesa*, 140 S.Ct.

735, 742 (2020), the Court noted that "[w]ith the demise of Federal general common law, a federal

court's authority to recognize a damages remedy must rest at bottom on a statute enacted by

Congress." The Court continued: "[i]n both statutory and constitutional cases, our watchword is

caution." *Id.* This echoes the recent Supreme Court approach in these matters which is to express

doubt about recognizing any causes of action not expressly created by Congress. *See Jesner v.*

*Arab Bank PLC*, 138 S. Ct. 1386, 1402 (2018). The Court has also noted that "when a party seeks

to assert an implied cause of action under a Federal statute, separation of powers are or should be central to the analysis." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017).

Against this background, the Court may not infer a cause of action in the Government's favor to recover duties which are subject to the statutory finality of liquidation contained in 19 U.S.C. § 1514(a). The Constitution grants Congress the exclusive power to set tariffs and to prescribe the manner of their collecting. Congress has specified rules for the assessment and collection of Customs duties, and those rules include the 19 U.S.C. § 1514(a) finality of liquidation. Proper respect for separation of powers counsels against this Court finding an implied cause of action to collect from Plaintiff, or any other importer, duties in cases where the liquidation assessments are final and conclusive on all parties, including CBP, and CBP cannot point to any exception to finality of liquidation which would allow it to collect additional duties in the current circumstance.

As noted below, inferring a cause of action in favor of the Government in the instant circumstances would trigger serious Constitutional concerns regarding whether importers who commence actions in the Court to challenge Customs' denial of their protests are being denied Equal Protection of the Law, in violation of the Fifth and Fourteenth Amendments to the Constitution.

**IV.    Interpreting 28 U.S.C. § 1583 as Creating a Cause of Action in Favor of the Government Would Violate the Equal Protection Clause of the Constitution.**

The allowance of a counterclaim predicated solely on the grant of this Court's 28 U.S.C. § 1583 jurisdiction would risk violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. The Equal Protection clause states "nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV §1. The

Constitution's Equal Protection guarantees apply to actions taken by the Federal Government through the Fifth Amendment. U.S. Const. amend. V; *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *see also: Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975). If interpreted as creating a cause of action for the Government to collect additional duties, 28 U.S.C. §1583 would create two separate classes: (i) those who exercise their fundamental constitutional right to seek judicial review of a Government exaction in this Court; and (ii) those who elect not to exercise their right to seek judicial review. The latter class would continue to enjoy the protection of the finality of liquidation set out in in 19 U.S.C. § 1514, while those who exercise their right to review are subject to further loss of property and may be penalized for exercising a fundamental Constitutional right if the Government is allowed to pursue an alternative classification claim on the same entries CBP previously liquidated, with a view to collecting additional duties over and above those assessed in liquidation.

If the Government has a *pre-existing* claim against an importer over which this Court has jurisdiction, then an importer invoking this Court's jurisdiction to hear its denied protest case runs the usual risk that the Government will assert its pre-existing claim by way of counterclaim. On the other hand, if the Government's cause of action is *created because* an importer seeks judicial review of a protest denial, this would create grave Equal Protection problems.

"Litigants enjoy a 'due process right to fully and fairly litigate each issue in their case." *Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169, 1217 (11ᵗʰ Cir. 2017) (citing *duPont v. Southern*, 771 F.2d at 874 (5ᵗʰ Cir. 1985)). The Supreme Court has found "because exaction of a tax constitutes a deprivation of property, the State must provide procedural safeguards against unlawful exactions in order to satisfy the commands of the Due Process Clause." *McKesson Corp. v. Div. of Alcoholic Bevs. & Tobacco,* 496 U.S. 48, 36 (1990).; *see also Stone Container Corp. v.*

26

*United States*, 229 F.3d 1345, 1350 (Fed. Cir. 2000). This due process right to review of a duty assessment, is a fundamental right. "Courts generally limit the definition of 'fundamental' rights to those based upon specific constitutional provisions." *Saqr v. Univ. of Cincinnati,* 2019 U.S. Dist. LEXIS 26467, *15 (S.D. Ohio 2019). The right to equal access to the courts has been recognized as a fundamental constitutional right drawing strict scrutiny. *See e.g*., *Bounds v. Smith*, 430 U.S. 817, 821 (1977) (in which Mr. Justice Marshall spoke of "the fundamental right of access to the courts").

As the right to review of a taking, and to fully and fairly litigate claims in Court is provided in the Constitution, the strict scrutiny standard should apply. See *Bounds v. Smith, supra.*

> Under equal protection analysis, the Supreme Court has fashioned a "two-tiered" approach to judicial review. Under this approach, the Court applies a "strict scrutiny" or "compelling reason" standard "only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class."

*Woodward v. United States*, 871 F.2d 1068, 1075 (Fed. Cir. 1989) (citing *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312-13, (1976)).

Classification counterclaims are not necessary to support a compelling Government interest. Here, the Government's application of its counterclaim under 28 U.S.C. § 1583, based solely on the existence of 28 U.S.C. § 1583, would burden persons seeking to exercise their fundamental due process rights in the courts. Here, the class allegedly being singled out for unfavorable treatment are parties who seek to appeal the denial of protest by CBP to the CIT.

Strict scrutiny "requires the Government to prove that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Std. Furniture Mfg. Co. v. United States*, 36 C.I.T. 237, 248 (2012) (citing *Federal Election Comm'n v. Wisconsin Right to Life, Inc.,* 551 U.S. 449, 464 (2007)). In identifying a compelling Governmental interest, "[t]he theme that

27

emerges is the identification of 'overriding,' 'paramount' governmental interests of the very 'highest order.' Interests of a lesser magnitude, those that are not paramount, including those that are otherwise served, cannot be considered 'compelling.'" *Legatus v. Sebelius*, 901 F. Supp. 2d 980, 991 (E.D. Mich. 2012).

The Government cannot establish an interest so paramount and overriding in its counterclaim to amount to an overriding or compelling governmental interest. Health care, public health, public safety and national security have traditionally been identified as overriding governmental interest. *See e.g., Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 310 (1978); *Haig v. Agee*, 453 U.S. 280, 307 (1981). At most, the interest the Government can point to here is the alleged incorrect classification of the products at issue and the payment of an additional duty for them. These two issues have absolutely nothing to do with public health, public safety or national security. As such, the Government cannot establish a compelling Governmental interest to pass the strict scrutiny test.

Moreover, Congress has not signaled that the collection of duties is a paramount interest, to be accomplished by any means available. The existence of the finality of liquidation provision in 19 U.S.C. § 1514(a) indicates otherwise.

Allowing the Government's counterclaim to be asserted based solely on 28 U.S.C. § 1583, would violate the Equal Protection clause of the U.S. Constitution because it unfairly creates distinctions that penalize importers exercising a Constitutional right to review of their customs classification and appraisement. Importers who do not exercise their Constitutional right to file a case challenging Customs taking of their property, through duty assessments, are protected from further assessments under 19 U.S.C. § 1514 when their entry liquidates. Those who file a protest regarding the taking, receive a denial of their protest, and proceed to Court under 28 U.S.C.

§ 1581(a) are classified differently. The Government asserts that it can further assess higher duties on these importers. There is no compelling Governmental interest, such as public health, safety, and national security, at issue because of the tariff classification or the collection of duties. As such this Court should find the asserted counterclaim violates the Equal Protection clause of the U.S. Constitution.

## CONCLUSION

CBP's assertion of a Counterclaim is improper and should be dismissed by this Court. Defendant failed in its obligation to timely assert a counterclaim and the undue delay in filing the counterclaim, after a case management motion was entered and at the end of discovery, significantly prejudices Plaintiff. In addition, the Government proposed counterclaim is futile. The Government lacks a recognizable cause of action as to which it can assert its counterclaim against Plaintiff. Finally, the counterclaim runs afoul of the Equal Protection clause of the U.S. Constitution. For the foregoing reasons, Plaintiff respectfully asks that the Court deny the Government's Motion with prejudice.

Respectfully submitted,

NEVILLE PETERSON LLP


/s/ John M. Peterson
John M. Peterson
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated:  February 18, 2022

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. GARY S, KATZMANN, JUDGE**

```
----------------------------------------------------------------------- X
SECOND NATURE DESIGNS LTD.,                    :
                                               :
              Plaintiff,                       :
                                               :
       v.                                      :        No. 17-cv-00271
                                               :
UNITED STATES,                                 :
                                               :
              Defendant.                       :
----------------------------------------------------------------------- X
```

<u>**CERTIFICATE OF COMPLIANCE**</u>

I, Patrick B. Klein, of Neville Peterson LLP, who is responsible for the instant Brief, relying upon the word count feature of the word processing program used to prepare the Brief, certify that it complies with the word count limitation under the Court's Standard Chambers Procedures and contains 9,958 words.

Respectfully submitted,

/s/ Patrick B. Klein
Patrick B. Klein