UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

_____
                                                            :
SECOND NATURE DESIGNS, LTD.,                :
                                                            :
                              Plaintiff,          :        Court No. 17-00271
                                                            :
                    v.                                    :
                                                            :
UNITED STATES,                                       :
                                                            :
                              Defendant.        :
_____:

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO FILE AN AMENDED
ANSWER AND A SUPPLEMENTAL PLEADING ASSERTING A COUNTERCLAIM**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:      /s/ Justin R. Miller
          JUSTIN R. MILLER
          Attorney-In-Charge
          International Trade Field Office

*Of Counsel*:                                         /s/ Brandon A. Kennedy
Alexandra Khrebtukova                       BRANDON A. KENNEDY
Senior Attorney                                    Trial Attorney
Office of the Assistant Chief Counsel   Civil Division, U.S. Dept. of Justice
International Trade Litigation              Commercial Litigation Branch
U.S. Customs and Border Protection     26 Federal Plaza, Room 346
New York, New York 10278                  New York, New York 10278
                                                            Tel.: (212) 264-9230
                                                            *Attorneys for Defendant*

Dated: March 22, 2022

## TABLE OF CONTENTS

ARGUMENT ........................................................................................................... 1

I.   OUR REQUEST IS SUPPORTED BY THE RULES ..................................................... 1

II.  THE EQUITIES SHOW RELIEF IS APPROPRIATE ........................................... 9

III. DEFENDANT'S MOTION IS MERITORIOUS AND NOT FUTILE .............................. 11

   A.  Standard Of Review ............................................................................. 11

     1.  USCIT Rule 12(b)(6) ....................................................................... 11

     2.  This Action Is Subject To *De Novo* Review ........................................ 12

   B.  The Government's Counterclaim Is Not Barred By The Finality Of Liquidation
      Because Liquidation Has Not Become Final ................................................. 13

     1.  The Entries Covering the Subject Merchandise Are Not Subject to
       19 U.S.C. § 1514(a) Finality ............................................................ 13

     2.  The Proper Classification Of The Merchandise Is The Issue Before The Court ...... 15

       a.  The Classification Of The Merchandise Is Subject To *De Novo* Review ........... 16

       b.  The Purpose Of 28 U.S.C. § 1583 ................................................ 17

   C.  The Government's Counterclaim States A Cause Of Action ........................... 20

CONCLUSION ......................................................................................................... 22

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*ABB, Inc. v. United States,*
   28 CIT 1444, 346 F. Supp. 2d 1357 (2004) .......................................................................... 13

*Antonious v. Spalding & Evenflo Cos., Inc.,*
   275 F.3d 1066 (Fed. Cir. 2002) ............................................................................................... 9

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................... 3, 4, 12, 20

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) .................................................................................................. 4, 12, 20

*Chrysler Corp. v. United States,*
   601 F. Supp. 2d 1347 (Ct. Int'l Trade 2009) ................................................................ 12, 13

*Constant v. Advanced Micro–Devices, Inc.,*
   848 F.2d 1560 (Fed. Cir. 1998) ............................................................................................. 12

*Cormorant Shipholding Corp. v. United States,*
   617 F. Supp. 2d 1270 (Ct. Int'l Trade 2009) ...................................................................... 18

*Cyber Power Systems (USA) Inc. v. United States,*
   Court No. 21-00200 .............................................................................................................. 11

*Foman v. Davis,*
   371 U.S. 178 (1962) ............................................................................................................... 10

*High Point Design LLC v. Buyers Direct, Inc.,*
   730 F.3d 1301 (Fed. Cir. 2013) ............................................................................................... 5

Intrepid v. Pollock,
   907 F.2d 1125 (Fed. Cir. 1990) ............................................................................................. 10

*Jarvis Clark, Inc. v. United States,*
   733 F.2d  (Fed. Cir. 1984) ..................................................................................................... 16

*Pioneer Inv. Services Co. v. Brunswick Associated Ltd. Partnership,*
   507 U.S 380 (1993) ................................................................................................................... 5

*Pressure Prods. Med. Supplies v. Greatbatch Ltd.,*
  599 F.3d 1308 (Fed. Cir. 2010) ........................................................................ 2, 3, 4

*Rienzi & Son, Inc. v. United States,*
  180 F. Supp. 3d 1349 (Ct. Int'l Tr. 2016) ........................................................ 2, 4

*Rockwell Automation, Inc. v. United States,*
  7 F. Supp. 3d 1278 (Ct. Int'l Trade 2014) ........................................................ 5

*Saab Cars USA, Inc. v. United States,*
  434 F.3d 1359 (Fed. Cir. 2006) ........................................................................ 13

*Tikal Distributing Corp. v. United States,*
  93 F. Supp. 2d 1269 (Ct. Int'l Trade 2000) ...................................................... 18

*Tomoegawa (U.S.A.), Inc. v. United States,*
  15 C.I.T. 182 (1991) ........................................................................................ 11

*United States v. Ford Motor Co.,*
  29 CIT 209 (2005) ............................................................................................ 11, 12

## Harmonized Tariff Schedule of the United States

Subheading 0604.90.30 .......................................................................................... 16

Subheading 0604.90.60 .......................................................................................... 16, 21, 22

Subheading 6702.90.65 .......................................................................................... 13, 18, 21, 22

## Statutes

19 U.S.C. § 1202 .................................................................................................... 16, 17

19 U.S.C. § 1501 .................................................................................................... 15

19 U.S.C. § 1503 .................................................................................................... 16, 17, 22

19 U.S.C. § 1514(a) ................................................................................................ *passim*

28 U.S.C. § 1581(a) ................................................................................................ 15

28 U.S.C. § 1583 .................................................................................................... 15, 17, 18, 19, 20

28 U.S.C. § 1583(1) ....................................................................................... 16

28 U.S.C. § 1592(d) ....................................................................................... 15

28 U.S.C. § 2639(a)(1) ................................................................................... 12

28 U.S.C. § 2643(b) ....................................................................................... 19

H.R. Rep. No. 96–1235, at 35 (1980) ...................................................... 18, 19

**<u>Rules</u>**

USCIT Rule 6(b) ............................................................................................... 2

USCIT Rule 6(b)(1)(B) ........................................................................ 1, 2, 4, 8

USCIT Rule 12(b)(6) ..................................................................................... 11

USCIT Rule 13(a) ......................................................................... 1, 6, 15, 16

USCIT Rule 13(d) ......................................................................................... 2, 6

USCIT Rule 15(a)(2) ................................................................................. 2, 6, 7

USCIT Rule 16(b) ......................................................................................... 2, 5

USCIT Rule 30(b)(6) ....................................................................................... 7

USCIT Rule 60(b) ............................................................................................. 5

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

_____

| | : | |
|---|---|---|
| SECOND NATURE DESIGNS, LTD., | : | |
| | : | |
| Plaintiff, | : | Court No. 17-00271 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

_____

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO FILE AN AMENDED
ANSWER AND A SUPPLEMENTAL PLEADING ASSERTING A COUNTERCLAIM**

Defendant, United States (the Government), hereby submits its reply brief in support of

its motion to file an amended answer and a supplemental pleading asserting a counterclaim. *See*

ECF 92.  As demonstrated below, our motion is supported by both the law and the facts.

**ARGUMENT**

**I.     OUR REQUEST IS SUPPORTED BY THE RULES**

Plaintiff, Second Nature, argues that our request is untimely and should be reviewed

under the standards of USCIT Rule 6(b)(1)(B), which provides that, "[w]hen an act may or must

be done within a specified time, the court may, for good cause, extend the time: (B) on motion

made after the time has expired if the party failed to act because of excusable neglect or

circumstances beyond the control of the party."  Pl. Opp. at 3.  We disagree with plaintiff.

Although the initial scheduling order for this case set a deadline for "motions regarding the

pleadings" on September 7, 2018, ECF 17, as we demonstrated in our opening papers, we did not

learn of the facts that support the amendment and counterclaims until December of 2021, and

plaintiff's arguments disregard the specific rules governing counterclaims. *See* USCIT Rules

13(a), 13(d), and 15(a)(2).  Under these rules, "[t]he court may permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading."  USCIT Rule 13(d).  Also, the rules allow a party to amend its pleading upon leave of court, and "[t]he court should freely give leave when justice so requires." USCIT Rule 15(a)(2).

Regardless of plaintiff's arguments, relief is appropriate as our request meets the standards of each of these rules, including the standards of good cause, excusable neglect, and circumstances beyond the control of the party, reflected in Rule 6(b)(1)(B).

Second Nature acknowledges that the Court "should freely give leave [to amend a pleading] when justice so requires", but then purports to quote *Pressure Prods. Med. Supplies v. Greatbatch Ltd.,* 599 F.3d 1308, 1319 (Fed. Cir. 2010), for the proposition that this "is not the rule when filing an amended complaint would violate a scheduling order."  Pl. Opp. at 3. However, this quoted language does not appear anywhere in the *Pressure Prods.* opinion.  *See* 599 F.3d at 1308-1325.  Second Nature again references *Pressure Prods.* by stating that "[t]he more rigid standard of **Rule 6(b)** is applicable to motions filed after a scheduling order deadline has expired and requires a showing of good cause to file outside the deadline[.]"  Pl. Opp. at 3 (emphasis added).  However, this is an inaccurate description of the case as the Court's opinion refers to "Rule 16(b)", not "Rule 6(b)".  *See Pressure Prods.*, 599 F.3d at 1308-1325.  Rule 16(b)(4) provides that, "[a] schedule may be modified only for good cause and with the judge's consent."

Second Nature also cites to *Rienzi & Son, Inc. v. United States*, 180 F. Supp. 3d 1349 (Ct. Int'l Tr. 2016), arguing that the Court should apply Rule 6(b)(1)(B) because our motion was filed after the deadline to amend the pleadings.  Pl. Opp. at 3-4.

*Pressure Prods.* is distinguishable and inapposite here for a number of reasons.  First, in *Pressure Prods.*, the defendant sought to amend its answer for the purpose of asserting a new defense of inequitable conduct, and not for the purpose of asserting counterclaims that arose *after* discovery began, as is the case here.  Def. Mot. at 1-8; 599 F.3d at 1319.  Second, the Court of Appeals for the Federal Circuit affirmed the trial court's denial of defendant's motion to amend its answer because defendant filed its motion in December of 2007—eight months after the scheduling order deadline to amend pleadings—but the Court noted that the declarations on which defendant's motion was grounded had been publicly available since 1996, and available specifically to defendant as early as January of 2007, and that "[n]othing prevented [defendant] from conducting discovery on the two 1995 . . . declarations shortly following this date." *Pressure Prods.*, 599 F.3d at 1320.  In contrast, in this case, none of the information requested by defendant from Second Nature was publicly available to us, defendant had no information in its possession prior to the deadline to amend pleadings which was sufficient to give rise to a motion to amend our answer and assert counterclaims, and defendant submitted the present motion merely a few weeks after it obtained the requested discovery information from Second Nature in December of 2021—more than three years after defendant issued its discovery requests to Second Nature—and which was necessary to file the present motion.  Def. Mot. at 1-8, 13. Finally, the Court in *Pressure Prods.* also noted that the invocation of the defense of inequitable conduct requires "specific and demanding showings of evidence", and it "doubt[ed] that the motion to amend would even satisfy these higher standards of proof."  599 F.3d. at 1320-21. Here, our counterclaim must satisfy the evidentiary threshold for stating a claim of relief that is plausible on its face, which it does, as discussed in further detail in Part III, *infra*.  *See Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Like *Pressure Prods.*, *Rienzi* is also distinguishable for several reasons.  First, *Rienzi* addressed plaintiff's motion to amend its own complaint *after* the close of discovery, whereas here, defendant filed its motion *before* discovery closed, and after first having given notice to Second Nature ten months (April of 2021) before the close of discovery (February of 2022) that we intended to file this motion.  Def. Mot. at 16; 180 F. Supp. 3d at 1352.  Second, in *Rienzi*, defendant would have faced additional duplicative discovery, whereas here, the parties have filed a joint statement of undisputed material facts, the same facts on which defendant's counterclaim is grounded, and plaintiff has identified no additional discovery that would be needed as to the counterclaimed styles.  Def. Mot. at 13-15; Pl. Opp. at 7; 180 F. Supp. 3d at 1353; *see also* ECF 60.  The imported merchandise is the property of Second Nature, which means that it has (or should have) full knowledge of the material characteristics and constituent components of its merchandise.  Third, the *Rienzi* court noted that "[t]he amendments Plaintiff seeks to make all relate to its description of the imported merchandise at issue, the details of which have been available to Plaintiff since the entries occurred more than a decade ago[,]" whereas here, it was Second Nature who did not make the full description of all of *its* merchandise at issue available to defendant until December of 2021.  Def. Mot. at 13; ECF 84, Joint Status Report; 180 F. Supp. 3d at 1353.

Nevertheless, even if our request is considered outside the date for "motions regarding the pleadings," ECF 17, relief is appropriate as the circumstances of this case meet the standards of good cause, excusable neglect, and circumstances beyond the control of the party, reflected in Rule 6(b)(1)(B).  "When assessing whether good cause has been shown, the primary

4

consideration is whether the moving party can demonstrate diligence." *High Point Design LLC v. Buyers Direct, Inc*., 730 F.3d 1301, 1319 (Fed. Cir. 2013) (internal citation omitted) (discussing "good cause" in the context of Rule 16(b)).  In *Pioneer Inv. Services Co. v. Brunswick Associated Ltd. Partnership*, 507 U.S 380, 394 (1993), the Supreme Court held that

> at least for purposes of Rule 60(b), "excusable neglect" is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence.  Because of the language and structure of Rule 60(b), a party's failure to file on time for reasons beyond his or her control is not considered to constitute "neglect."

*See also Rockwell Automation, Inc. v. United States*, 7 F. Supp. 3d 1278, 1283-84 (Ct. Int'l Trade 2014).  Factors to assess whether neglect is "excusable" include prejudice to the non-movant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.  *See Pioneer*, 507 U.S. at 395; *see also Rockwell*, 7 F. Supp. 3d at 1283.

The facts described in our motion, *see* Def. Mot. at 1-8, as well as throughout this reply, demonstrate (1) defendant's diligence throughout discovery in moving this case forward in the face of Second Nature's significant and undue delay in responding to our discovery requests, particularly the most crucial one requesting an identification and material description of each and every style of merchandise at issue in this action; (2) no evidence of negligence on defendant's behalf; and (3) the circumstances for defendant's motion being filed more than three years after the deadline for amending pleadings were squarely within Second Nature's control given its undue delay in responding fully and accurately to defendant's discovery requests.

We first note that complaints and answers have distinguishing characteristics, which are relevant to the equities of this motion.  Namely, in cases challenging U.S. Customs and Border Protection's (CBP or Customs) denial of protests concerning the tariff classification of imported

merchandise, the plaintiff has full command of the facts regarding its own merchandise. Thus, when a complaint is filed in these circumstances, plaintiff is able to describe its claims with particularity. That is not always the case with counsel for the United States when responding to a complaint and filing an answer. Although issues are initially vetted through an administrative protest procedure, counsel for the United States typically has a limited understanding of the imported merchandise when it files its answer in a tariff classification case. As a result, the tools of discovery are used to identify the necessary facts to prepare the defense of the case. The procedural history of this case clearly shows that the circumstances involving *Second Nature's* responses to defendant's discovery requests were squarely within *Second Nature's* control. To deny us relief to amend our answer and file a counterclaim would encourage future plaintiffs to engage in undue delay in propounding full and accurate responses to defendant's legitimate discovery requests to foreclose any potential counterclaims.

Second Nature's argument is flawed because it ignores USCIT Rules 13(a), 13(d), and 15(a)(2) which are applicable to motions to file amended answers including counterclaims, such as the present motion. Here, we did not have a basis to amend our answer or assert counterclaims until after conducting discovery, given Second Nature's undue delay in fully and completely responding to our discovery requests seeking a complete understanding of the nature and material characteristics of Second Nature's voluminous and diverse merchandise which was incompletely described in the allegations in the complaint. Indeed, we did not know that Second Nature's allegations were incomplete until after conducting significant discovery. *See* Def. Mot. at 1-8.

The rules allow "a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading." USCIT Rule 13(d).

Also, a party may amend its pleading upon leave of court, and "[t]he court should freely give leave when justice so requires."  USCIT Rule 15(a)(2).  If defendant were only permitted to amend its answer or file a counterclaim *before* sufficient discovery progressed, as Second Nature suggests, *see* Pl. Opp. at 3-4, then defendant would not have the benefit of discovering the information necessary to amend its answer or file a counterclaim.

Here, defendant did not have sufficient information to seek to amend its answer and file a counterclaim until after the expiration of the deadline in the initial scheduling order.  *See* Def. Mot. at 1-8.  As the history of the case shows, defendant did not begin to realize that Second Nature's merchandise consisted of vastly more varied styles than had been previously anticipated based on the complaint, and that Second Nature's discovery responses were incomplete, until *after* defendant deposed Second Nature's designated agent pursuant to USCIT Rule 30(b)(6), in November of 2018.  However, *defendant still did not have sufficient information to recognize that a counterclaim had arisen*.  *See* Def. Mot. at 4-8.  Indeed, throughout 2019 and 2020, defendant reached out to Second Nature multiple times in an attempt to receive full and accurate responses, without success.  *See id.* (describing, *inter alia*, Second Nature's multiple incomplete and inaccurate spreadsheets and defendant's attempts to obtain full and accurate discovery responses).

Given Second Nature's failure to fully and accurately respond to our discovery requests or to our Rule 37 letter, on August 7, 2020, and in its duty to be diligent, defendant was obligated to file a motion to compel Second Nature to supplement its responses to defendant's discovery requests.  ECF 38.  Since November 2, 2020, and as a result of defendant's motion to compel and the Court's orders for the parties to regularly file joint status reports, Second Nature finally

began to produce (piecemeal) the information that defendant had requested since 2018 and that ultimately turned out to support our counterclaims.

However, as demonstrated in the numerous joint status reports, defendant still did not have a complete identification and description of all material characteristics for each distinct product style in this case until a few weeks before defendant filed the present motion.  Def. Mot. at 13.  Although defendant first acknowledged the possibility of moving to file a counterclaim by indicating it would be seeking *internal* government approval for such in the joint status report filed on April 7, 2021 (ECF 52), defendant did not have all the facts to support the allegations in its counterclaim until the time at which it filed the present motion.  Def. Mot. at 13, 16.  Internal government approval to *seek* to assert a counterclaim (should all further necessary facts be elicited through ongoing discovery), does not mean that the Government had all the facts necessary to formally seek the Court's leave to assert such counterclaims and survive a motion to dismiss.  As such, defendant did not have sufficient information to file this motion until January of 2022, given that the necessary facts regarding the identification and material description of the styles at issue were not known until December of 2021, as reflected by the parties' filing of a finalized joint statement of undisputed material facts in January of 2022.  Def. Mot. at 13.  And as described above, this delay is attributed to Second Nature's initial failure and subsequent undue delay in providing full and accurate responses to our discovery requests, which we first issued in 2018.

Given all the facts above, relief is appropriate as our request meets the standards of each of the rules, including the standards of good cause, excusable neglect, or circumstances beyond the control of the party, reflected in Rule 6(b)(1)(B).

## II.     THE EQUITIES SHOW RELIEF IS APPROPRIATE

Contrary to Second Nature's incorrect assertion, Pl. Opp. at 4, the equities show that relief is appropriate.

Second Nature argues that our motion is untimely by alleging that "the required information was in Defendant's possession no later than November 2018, if not earlier," and that defendant's statement that, "after deposing plaintiff's designated agent, it became clear that the subject merchandise consisted of vastly more varied styles than had been previously anticipated," indicates that defendant was "aware of its potential claims at this time."  Pl. Opp. at 5.

Second Nature is wrong.  First, our prior statements do not reflect an awareness of potential counterclaims, but rather they describe that Second Nature's *discovery responses* <u>appeared</u> to be incomplete.  Second, we did not anticipate potential counterclaims because we did not have a full list and description of all material characteristics for each and every style at issue in this case, as we requested from Second Nature in September of 2018 but did not obtain in full ***until December of 2021***.  Third, even if awareness of potential counterclaims was possible at that time, awareness of *potential* claims does not equate to an ability to formally seek to assert an *actual* counterclaim, which did not arise until December of 2021.  *See* Antonious v. Spalding & Evenflo Cos., Inc., 275 F.3d 1066, 1071 (Fed. Cir. 2002) (discussing the pleading obligations under Rule 11, including the requirement of evidentiary support for factual allegations).

Second Nature argues that by November 2018, defendant "had in its possession more than enough information to develop its counterclaim theory," and that defendant "was well aware [sic] its proposed alternative classifications for the next three-and-a-half years and was not afraid to raise this issue before this Court or to plaintiff."  Pl. Opp. at 7.  This argument is contradicted

9

by the record of the proceedings, which shows undue delay by *Second Nature* (*e.g.*, defendant's Rule 37 letter, defendant's motion to compel, and various joint status reports noting that defendant was waiting for responses from Second Nature).  Indeed, the parties were unable to submit a joint statement of undisputed material facts until January of 2022, an indication that defendant did not have all the facts regarding the identification and material description of the various styles of merchandise at issue until then, not only to assert its defenses, but also to raise any counterclaims.

When weighing the equities, the potential prejudice to be considered is "undue prejudice".  *Intrepid v. Pollock*, 907 F.2d 1125, 1128 (Fed. Cir. 1990) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Second Nature cannot claim undue prejudice as a result of our request because the counterclaims concern the same action, merchandise, and operative set of facts and law.  Def. Mot. at 15-16.  Nevertheless, Second Nature claims undue prejudice by arguing that "[t]o attempt to send this case back to the pleadings stage after more than 4 years and after dispositive motion briefing is scheduled would be chaotic and prejudicial to plaintiff." Pl. Opp. at 7.  However, Second Nature fails to provide any explanation or evidence to substantiate this claim.  Nor does Second Nature provide any explanation or evidence to demonstrate undue prejudice when it says that defendant "waited until the end of the discovery period" to seek leave to file a counterclaim.  Pl. Opp. at 8.  Second Nature has been on notice since April of 2021 that defendant was exploring the possibility of asserting counterclaims, and Second Nature has not identified in its opposition to defendant's motion any discovery that it would seek regarding the 97 styles on which defendant seeks to counterclaim.  *See id.*, at 7-8. Moreover, it has already agreed to all the material facts in the allegations asserted in our counterclaim, given that they are the same facts that were agreed to in the parties' joint

10

statement.  *See* ECF 91-1.  Like the plaintiff in *Tomoegawa (U.S.A.), Inc. v. United States,* 15 C.I.T. 182, 189 (1991), here too Second Nature's "unsubstantiated allegations do not provide a sufficient demonstration of prejudice."

As to the procedural posture, defendant's counterclaims were made during discovery (which was set to close on February 14, 2022), which is a reasonable point given that the critical facts regarding the true nature of Second Nature's merchandise were only recently elicited during discovery.  Second Nature complains that it is prejudiced by the close of discovery, *see* Pl. Opp. at 8, but plaintiff has been on notice of our intentions to seek leave of court to file counterclaims since April of 2021.  In addition, these counterclaims will aid the Court in fulfilling its statutory mandate to classify the merchandise under the correct tariff provisions.

In sum, the equities weigh heavily in favor of defendant, and our motion should be granted.

## III.    DEFENDANT'S MOTION IS MERITORIOUS AND NOT FUTILE

Second Nature argues that an additional factor that the Court should consider is whether defendant's amendment would be futile.  Pl. Opp. at 9.  In this case, defendant's motion is meritorious and not futile because it is grounded in a valid cause of action and can withstand any motion to dismiss.[1]

### A.  **Standard Of Review**

#### 1.  USCIT Rule 12(b)(6)

"The Court may dismiss a counterclaim for failure to state a claim only 'where it appears beyond doubt that plaintiff can prove no set of facts which will entitle him to relief." *United*

---

[1] Plaintiff's counsel has made similar arguments in a motion to dismiss counterclaims filed in *Cyber Power Systems (USA) Inc. v. United States*, Court No. 21-00200.  Our analysis in this case is consistent with those in *Cyber Power*.

*States v. Ford Motor Co.*, 29 CIT 209, 211 (2005) (quoting *Constant v. Advanced Micro–Devices, Inc.*, 848 F.2d 1560, 1565 (Fed. Cir. 1998)).  "Moreover, the Court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." *Ford*, 29 CIT at 211.  Thus, the same analysis applicable to a motion to dismiss a complaint is applicable to one seeking to dismiss a counterclaim.

"To survive a motion to dismiss, a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  A claim has facial plausibility when it "raise[s] a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted).  "While a [counterclaim] . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545; *see also Iqbal*, 556 U.S. at 662 ("[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  The [counterclaim] must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Determining whether the factual pleading standard has been met is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## 2.  This Action Is Subject To *De Novo* Review

This Court reviews CBP's protest decisions *de novo*. *Chrysler Corp. v. United States*, 601 F. Supp. 2d 1347, 1350 (Ct. Int'l Trade 2009).  However, CBP's decisions are statutorily entitled to a presumption of correctness.  28 U.S.C. § 2639(a)(1) ("the decision of the Secretary of the Treasury, the administering authority, or the International Trade Commission is presumed

to be correct.  The burden of proving otherwise shall rest upon the party challenging such

decision.").  Where a plaintiff challenges Customs' decision, "a court presumes that Customs

applied the provision correctly, which means that the plaintiff is left with the burden of showing

by a preponderance of the evidence that Customs' decision was incorrect."  *ABB, Inc. v. United*

*States*, 28 CIT 1444, 346 F. Supp. 2d 1357, 1364 (2004); *see also Saab Cars USA, Inc. v. United*

*States*, 434 F.3d 1359, 1368 (Fed. Cir. 2006) (a plaintiff must "meet its burden of contradicting

Customs' presumed correct factual finding . . . .").  The presumption of correctness "is not a true

evidentiary presumption governed by Federal Rule of Evidence 301," instead it is "an

'assumption' that allocates to plaintiff the burden of proof on contested factual issues that arise

from the protest decision."  *Chrysler*, 601 F. Supp. 2d at 1354.

### B.  The Government's Counterclaim Is Not Barred By The Finality Of Liquidation Because Liquidation Has Not Become Final

Second Nature's futility argument first alleges that the Government's counterclaim

requesting classification under subheading 6702.90.65 of the Harmonized Tariff Schedule of the

United States (HTSUS), with its increase in duties owed, is barred by statutory finality under 19

U.S.C. § 1514(a).  For the reasons that follow, Second Nature is incorrect.

### 3.  The Entries Covering the Subject Merchandise Are Not Subject to 19 U.S.C. § 1514(a) Finality

In pertinent part, section 1514(a) provides:

> Except as provided in subsection (b) of this section, section 1501
> of this title (relating to voluntary reliquidations), section 1516 of
> this title (relating to petitions by domestic interested parties),
> section 1520 of this title (relating to refunds), and section 6501 of
> title 26 (but only with respect to taxes imposed under chapters 51
> and 52 of such title), any clerical error, mistake of fact, or other
> inadvertence, whether or not resulting from or contained in an
> electronic transmission, adverse to the importer, in any entry,
> liquidation, or reliquidation, and, decisions of the Customs

> Service, including the legality of all orders and findings entering into the same, as to—
>
> (2) the classification and rate and amount of duties chargeable;
>
> shall be final and conclusive upon **all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced** in the United States Court of International Trade in accordance with chapter 169 of title 28 within the time prescribed by section 2636 of that title. When a judgment or order of the United States Court of International Trade has become final, the papers transmitted shall be returned, together with a copy of the judgment or order to the Customs Service, which shall take action accordingly.

(Emphasis added).

Based on the plain statutory language, the final and conclusive effect of section 1514(a) will not apply to any person, **including the Government**, where a protest has been filed and an action commenced in the CIT. As admitted by Second Nature in its summons, it filed 11 protests covering 149 entries. ECF 1. Second Nature indicated on page two of the summons that it was protesting the tariff classification of the subject merchandise and that the competing duty rates were "7% ad valorem" and "Duty free". *Id.* The protests were denied on various dates from May through October of 2017. *Id.* By commencing this action on November 17, 2017, Second Nature fulfilled the statutory requirements to avoid finality from attaching to CBP's denial of its protest disputing the classification and duty rates of the imported merchandise at issue.

Second Nature's discussion of exceptions to finality of liquidation is inapposite and does not affect the Government's counterclaim. *See* Pl. Opp. at 13-17. Based on the terms of section 1514, the filing of a protest or a civil action contesting the denial of a protest prevents the liquidation from being "final and conclusive upon all persons (including the United States and any officer thereof)". The Government does not claim that it is entitled to file a protest or that

14

section 1581(a) provides the jurisdiction for our cause of action.  Instead, the protest and commencement of this action are the predicates needed by an importer to dispute a decision by CBP.  And when that importer satisfies those predicates, finality does not attach to the liquidation, *see* section 1514, thereby allowing the Government to file a counterclaim.  *See* USCIT Rules 13(a), (d); 28 U.S.C. § 1583.

Nevertheless, Second Nature seems to believe that the Government's ability to recover additional duties resulting from the Court's determination that the imported merchandise is subject to a classification with a higher duty rate is cut off if CBP has not applied the higher rate during the 90-day reliquidation period provided in 19 U.S.C. § 1501.  Such a theory is contrary to the plain meaning of 28 U.S.C. § 1583, which permits a counterclaim for additional duties associated with the imported merchandise that is the subject of the complaint.  Further, such a theory would undermine the uniform and consistent application of the customs laws by allowing an importer to avoid paying increased duties that this Court determined to be due.

Finally, contrary to Second Nature's argument (Pl. Opp. at 17-20), given the lack of finality as to the liquidation of the subject merchandise, the Government is not limited to seeking duties through an action under 28 U.S.C. § 1592(d).  As explained *infra*, one of the reasons for allowing a counterclaim in a section 1581(a) action is to promote judicial efficiency.  Requiring the Government to burden the Court with a section 1592(d) action involving the same merchandise when the vehicle of a counterclaim is available is contrary to congressional intent.  Second Nature is correct, however, that our counterclaim is not based on section 1592(d).

4.   The Proper Classification Of The Merchandise Is The Issue Before The Court

In the only count of its complaint, Second Nature asserts that duties at 7 percent *ad valorem*, pursuant to subheading 0604.90.60, HTSUS, should not have been assessed against the

subject merchandise because, in Second Nature's view, that merchandise satisfies the requirements of subheading 0604.90.30, which provides for duty-free treatment of goods classified under that provision.  Subheading 0604.90.30 provides duty-free treatment for:

> Foliage, branches and other parts of plants, without flowers or flower buds, and grasses, mosses and lichens, being goods of a kind suitable for bouquets or for ornamental purposes, fresh, dried, dyed, bleached, impregnated or otherwise prepared: Other: dried or bleached.

### c.   The Classification Of The Merchandise Is Subject To *De Novo* Review

To support its claim of duty-free treatment under subheading 0604.90.30, HTSUS, Second Nature must establish by a preponderance of the evidence that the subject merchandise is classifiable in subheading 0604.90.30.  However, to determine the proper classification of the merchandise, the Court conducts a *de novo* review.

Second Nature recognizes that "this Court has an obligation under *Jarvis Clark, Inc. v. United State*s, 733 F.2d 878 (Fed. Cir. 1984) to find the 'correct' result." Pl. Opp. at 16.[2]  If, in reaching that correct result, the Court determines that a different classification requiring additional duties is applicable, it could only award relief to the Government if the Government has asserted a counterclaim.  By commencing a counterclaim consistent with USCIT Rule 13(a), over which this Court has jurisdiction pursuant to 28 U.S.C. § 1583(1), the Government has protected its right to receive any increased duties, interest, and fees that flow from the Court's decision.

---

[2] Second Nature argues that *Jarvis Clark* does not confer a cause of action on the Government. Pl. Opp. at 16.  As discussed *infra*, our counterclaim arises under 19 U.S.C. § 1202 *et seq.*; 19 U.S.C. § 1503; and 19 U.S.C. § 1514(a).

d.   The Purpose Of 28 U.S.C. § 1583

As will be explained further, the grounds for our claim reside in the tariff schedule statute itself, and the duty rate it carries that is applicable to the imported merchandise and in our charge to enforce the customs laws (such as 19 U.S.C. § 1503, reliquidation in accordance with the Court's determination).  This is so because under the customs laws, the Government is entitled to duties owed on imported merchandise after liquidation or reliquidation.  *See* the HTSUS, codified at 19 U.S.C. § 1202 *et seq*.  The proper amount of duties is determined by the rate of duty associated with the subheading that correctly describes the imported merchandise.  19 U.S.C. § 1202.  Section 1503 (Dutiable Value) states "[t]hat if reliquidation is required pursuant to a final judgment or order of the United States Court of International Trade which includes a reappraisement of imported merchandise, the basis for such assessment shall be the final appraised value determined by such court."  19 U.S.C. § 1503.  If the Court determines that the correct subheading is different from and has a higher duty rate than the one under which the goods were classified at liquidation, then, consistent with section 1514(a) and/or section 1503, CBP is charged with enforcing the tariff correctly and receiving the duties it was entitled to had the goods been properly classified when entered by the importer.  19 U.S.C. § 1514(a) ("When a judgment or order of the United States Court of International Trade has become final, the papers transmitted shall be returned, together with a copy of the judgment or order to the Customs Service, which shall take action accordingly.").

Our counterclaim asserts that, based on our enforcement of the HTSUS, we are entitled to receive additional duties should the Court agree that certain styles of the subject merchandise are properly classified under subheading 6702.90.65, HTSUS.  Our counterclaim gives effect to the will of Congress.  Historically, when the Court determined that the proper classification of

17

imported merchandise called for an increase in duties, "the court could only dismiss the action, without requiring the plaintiff to pay any additional duties." *Cormorant Shipholding Corp. v. United States*, 617 F. Supp. 2d 1270, 1276 n.17 (Ct. Int'l Trade 2009). "Section 1583 remedied this problem and permits the [G]overnment to 'assert[ ] a claim that would allow the court to make the proper determination and accordingly would enable the Government to collect the full amount of duties.' H.R.Rep. No. 96–1235, at 36 (1980)." *Id.*; *see also Tikal Distributing Corp. v. United States*, 93 F. Supp. 2d 1269, 1275 n.4 (Ct. Int'l Trade 2000). Indeed, the legislative history behind section 1583 explains:

> The United States may defend the action either by claiming that the original valuation is correct or by asserting in the alternative that if the original valuation is incorrect, the goods should be valued at an amount higher than that claimed by the plaintiff. In cases in which the plaintiff has demonstrated that the original valuation is erroneous, but where the Government has proven a higher valuation, the Customs Court has not required the plaintiff to pay the higher duties. In those instances, the court has dismissed the action. However, all subsequent imports of the same goods are valued at the higher tariff rate proved by the Government at trial. Under the provision proposed in H.R. 6394, it would be possible for the court to rule that a plaintiff should pay additional duties to the United States on the basis of the counterclaim asserted and proved by the United States. That provision would allow the counterclaim to be asserted not only with regard to the particular matter which gave rise to the civil action being litigated but also as to all other civil actions pending in the Court of International Trade involving import transactions by the same plaintiff. Several witnesses strongly recommended the deletion of this provision from the legislation. They claimed that the counterclaim provision would permit the Government to exact additional duties from importers months after the importer has moved his goods into the stream of commerce at a price that accounts for the duties assessed by the Customs Service.

H.R. Rep. No. 96–1235, at 35 (1980). Although the legislative history speaks in terms of a valuation case, its analysis applies with equal force to a classification case. Thus, by enacting section 1583, Congress recognized the Government's right to payment of additional duties,

interest, and fees if the Court's determination so warrants.  Moreover, the congressional scheme permitting the Government to recover additional duties, interest, and fees through the vehicle of a counterclaim is further supported by 28 U.S.C. § 2643(b), which permits the Court to enter a money judgment "for or against the United States or any other party in any counterclaim, cross-claim, or third-party action under section 1583 of this title."

Second Nature complains that our assertion of a counterclaim in actions brought by importers to challenge a denied protest "would deny importer-plaintiffs Equal Protection of the Laws" and potentially "create two separate classes": those exercising the right to seek judicial review, and those who do not and would therefore continue enjoying the protection of finality. Pl. Opp. at 1, 26.  But Congress addressed this concern by promulgating section 1583 narrowly. Under the initial draft of section 1583, the court could have ruled that plaintiff had to pay the United States additional duties not only as to the subject matter of the action, but also as to other actions in the CIT involving the plaintiff's import transactions.  H.R.Rep. No. 96–1235 at 35. The Association of the Customs Bar argued that this provision would "have a chilling effect on the commencement of litigation in the Court of International Trade" because litigants would be exposed to liability, especially if the Government were raising challenges to importations that were not the subject of plaintiff's complaint.  *Id.* at 35-36.  Like Second Nature here, others argued then that the Government has "ample opportunity prior to and after liquidation to reassess the initial valuation or classification and should not be accorded still another opportunity."  *Id.* at 36.  However, representatives of the importing community "agreed that limiting the counterclaim to 'the imported merchandise' would be a reasonable limitation."  *Id.* Moreover, further testimony provided that:

19

there is nothing extraordinary about litigants and their lawyers having to balance the likely benefits of proposed litigation against the possibility of counterclaims.

On the one hand, by allowing some counterclaims involving the same importer which we do propose be done, you're in the position of consolidating litigation, getting disputes between the same parties resolved more quickly. The fact that somebody has to consider whether they are subject to claims when they bring suit is the kind of judgment lawyers are called upon to make in a whole host of occasions when they have to advise clients whether it's prudent or not prudent to come forward and bring litigation.

*Id.* The same concerns Second Nature raises here were considered by Congress in narrowly tailoring section 1583. All importers should be aware that by protesting and bringing an action, they face the potential of a counterclaim from the Government. Thus, whether to protest and commence a court action is simply a decision based on weighing the costs and benefits of doing so. All importers are similarly situated in doing such an analysis.

## C.  **The Government's Counterclaim States A Cause Of Action**

Second Nature contends that its motion to dismiss our counterclaim should be granted because the counterclaim failed to state a claim for which relief can be granted. Pl. Opp. at 9-20. Second Nature is wrong.

"To survive a motion to dismiss, a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In other words, the factual allegations must be sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the [counterclaim] are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. Our counterclaim satisfies the *Iqbal-Twombly* standard because it provides enough factual matter to establish our right to relief: collecting the 10 percent duty difference between subheading 6702.90.65, HTSUS

(17 percent), and subheading 0604.90.60 (7 percent) if the Court were to determine that the subject merchandise is properly classified under subheading 6702.90.65.

In sum and substance, besides identifying the cause of action, jurisdiction, parties, and relief sought, our counterclaim lays out in detail sufficient facts identifying and describing the styles of merchandise at issue in our counterclaim, which are included among the same imported merchandise in the protests and entries at issue in plaintiff's complaint, and laying out our legal claims as to why the physical characteristics of the 97 styles we have identified in our counterclaim compel their reclassification under subheading 6702.90.65, HTSUS, to recover the full 17 percent *ad valorem* duty applicable under that subheading, which is higher than the protested 7 percent *ad valorem* duty assessed at liquidation under subheading 0604.90.60 based on the entry documentation filed by the importer or broker. *See* ECF 92-1, Def. Counterclaim, ¶¶ 5-23; *see also* ECF 92-2, Def. Exh. 1 (identifying the 97 styles of merchandise included in our counterclaim).

Construing our factual allegations as true and viewing them in the light most favorable to the Government (*i.e.*, non-moving party), our counterclaims would withstand a motion to dismiss by Second Nature, particularly since the factual allegations describing the merchandise are taken from the parties' joint statement of undisputed material facts. These allegations state a plausible claim for relief: the Government's right to collect the difference in duty between subheading 6702.90.65, HTSUS, and subheading 0604.90.60 is consistent with its duty to enforce the HTSUS. Nor can Second Nature dispute that the Government is entitled to receive liquidated duties due under the tariff. Indeed, Second Nature acknowledges it paid such duties in commencing this action. Compl. ¶ 3. Therefore, the grounds for our claim reside in the tariff schedule statute itself, and the duty rate it carries that is applicable to the imported merchandise

and in our charge to enforce the customs laws such as section 1503 (reliquidation in accordance with the Court's determination).

Thus, the question here turns on whether the Government is entitled to receive additional duties if the Court agrees that the 97 styles of the subject merchandise, identified in our counterclaim, are classifiable under subheading 6702.90.65, HTSUS, and not 0604.90.60.  If subheading 6702.90.65 is applicable, then proper enforcement of the tariff statute would call for CBP to reliquidate the entries to apply that subheading and its associated duty rate to the subject merchandise.  *See* 19 U.S.C. § 1514(a) ("When a judgment or order of the United States Court of International Trade has become final, the papers transmitted shall be returned, together with a copy of the judgment or order to the Customs Service, which shall take action accordingly.").  Our counterclaim asserts that, based on our enforcement of the HTSUS, the United States is entitled to receive the full amount of underpaid customs duties legally owed for the subject merchandise.  As such, the counterclaim has stated a claim upon which relief can be granted.

## <u>CONCLUSION</u>

We respectfully request that our motion to file an amended answer and a supplemental pleading be granted.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:    /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*Of Counsel*:                                      /s/ Brandon A. Kennedy
Alexandra Khrebtukova                    BRANDON A. KENNEDY
Senior Attorney                               Trial Attorney
Office of the Assistant Chief Counsel    Civil Division, U.S. Dept. of Justice
International Trade Litigation             Commercial Litigation Branch
U.S. Customs and Border Protection       26 Federal Plaza, Room 346
New York, New York 10278                  New York, New York 10278
                                          Tel.: (212) 264-9230
                                          *Attorneys for Defendant*

Dated: March 22, 2022

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

_____
                                         :

SECOND NATURE DESIGNS, LTD.,      :
                                         :

                     Plaintiff,     :     Court No. 17-00271
                                         :

                v.                    :
                                         :

UNITED STATES,                     :
                                       :

                   Defendant.    :
_____:

### CERTIFICATE OF COMPLIANCE

     I, Brandon A. Kennedy, a Trial Attorney in the Office of the Assistant Attorney General,

Civil Division, Commercial Litigation Branch, International Trade Field Office, who is the

attorney responsible for the foregoing brief, relying upon the word count feature of the word

processing program used to prepare the response, certify that this memorandum complies with

the word count limitation under the Court's chambers procedures, and contains 6,985 words.

                                     /s/ Brandon A. Kennedy
                                     BRANDON A. KENNEDY