**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. GARY S. KATZMANN, JUDGE**
-------------------------------------------------------------------- X
SECOND NATURE DESIGNS LTD.,                            :
                                                      :
               **Plaintiff,**                         :
                                                      :
               *v.*                                   :          **No. 17-cv-00271**
                                                      :
**UNITED STATES,**                                    :
                                                      :
               **Defendant.**                         :
-------------------------------------------------------------------- X

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**</u>
<u>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**</u>

NEVILLE PETERSON LLP

John M. Peterson
Richard F. O'Neill
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated:  May 13, 2022

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. ii

SUMMARY OF ARGUMENT ...........................................................................................2

STATEMENT OF FACTS ..................................................................................................3

I.      Plaintiff's Subject Entries, Protest Filing, Protest Denial, Commencement of 28 U.S.C. § 1581(a) Action. .......................................................................................................6

II.     Relevant Tariff Provisions ......................................................................................7

STANDARD OF REVIEW .................................................................................................7

ARGUMENT .......................................................................................................................9

I.      The Terms of Subheading 0604.90.30, HTSUS Accurately and Specifically Describe the Category 1 Merchandise ...................................................................................9

        A.      An Eo Nomine Provision of the HTSUS Covers All Forms of the Named Article ..........................................................................................................................10

        B.      To the Extent Subheading 0604.90.30, HTSUS Applies, Subheading 0604.90.60, HTSUS Does Not ....................................................................14

II.     The Terms of Subheading 0604.90.30, HTSUS Accurately and Specifically Describe the Category 2 Products ..................................................................................15

III.    The Terms of Subheading 0604.90.30, HTSUS Accurately and Specifically Describe the Category 3 Merchandise ..................................................................................16

IV.     The Terms of Subheading 0604.90.30, HTSUS Accurately and Specifically Describe the Category 4 Merchandise ..................................................................................17

V.      The Terms of Subheading 0604.90.30, HTSUS Accurately and Specifically Describe the Category 5 Merchandise ..................................................................................18

VI.     The Terms of Subheading 0604.90.30, HTSUS Accurately and Specifically Describe the Category 6 Merchandise ..................................................................................18

VII.    The Terms of Subheading 0604.90.30, HTSUS Accurately and Specifically Describe the Category 7 Merchandise ..................................................................................19

VIII.   Agreed Upon Classification for Category 8 of the Merchandise ......................................21

CONCLUSION ....................................................................................................................22

i

## **TABLE OF AUTHORITIES**

**Cases**

*A.N. Deringer Inc. v. United States*, 10 C.I.T. 577 (1986) ............................................................ 12

*Airflow Tech., Inc. v. United States*, 35 C.I.T. 1540 (2011) .................................................. 2, 21

*BASF Corp. v. United States*, 482 F.3d 1324 (Fed. Cir. 2007)............................................... 2, 21

*Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363 (Fed. Cir. 1998) ...................................... 8

*C.T. Takahashi & Co. v. United States*, 74 Cust. Ct. 38 (1975). .................................................. 12

*Carl Zeiss, Inc. v. United States*, 195 F.3d 1375 (Fed. Cir. 1999)................................................ 13

*Casio, Inc. v. United States*, 73 F.3d 1095 (Fed. Cir. 1996)........................................................ 14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................ 8

*Chevron Chem. Co. v. United States*, 59 F. Supp. 2d 1361 (Ct. Int'l Tr. 1999) ........................... 9

*Crosse & Blackwell Co. v. United States*, 36 C.C.P.A. 33 (1948).................................... 10, 11

*Cummins Inc. v. United States*, 454 F.3d 1361 (Fed. Cir. 2006) .................................................. 8

*EM Indus. v. United States*, 22 C.I.T. 156 (1998).................................................................... 14

*GRK Can., Ltd. v. United States*, 761 F.3d 1354, 1360-61 (Fed. Cir. 2014).............................. 13

*Jarvis Clark Co. v. United States*, 733 F.2d 873 (Fed. Cir. 1984)............................................ 2, 8

*LeMans Corp. v. United States*, 660 F.3d. 1311 (Fed. Cir. 2011). ............................................ 21

*Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)................................. 9

*Mita Copystar America v. United States,* 160 F.3d 710 (Fed. Cir. 1998)............................... 3, 21

*Nootka Packing Co. v. United States*, 22 C.C.P.A. 464 (1935)................................................ 10

*Outer Circle Products Inc. v. United States,* 602 F. Supp. 2d 1294 (Ct. Int'l Trade 2009). ........ 10

*Pillowtex Corp. v. United States*, 171 F.3d 1370 (Fed. Cir. 1999)............................................... 8

*Processed Plastic Co. v. United States*, 29 C.I.T. 1129 (2005) .................................................... 8

*Processed Plastic Co. v. United States*, 473 F.3d 1164 (Fed. Cir. 2006) ...................................... 8

*Robert G. Lynch Co. v. United States,* 49 C.C.P.A. 74 (1962), ................................................ 11

*Simon Mktg. v. United States*, 29 C.I.T. 1111 (2005) .................................................................. 8

*T.M. Duche & Sons, Inc. v. United States*, 44 C.C.P.A. 60 (1957) .................................... 10, 11

*THK America Inc. v. United States*, 837 F. Supp. 427 (Ct. Int'l Trade 1993). ............................ 13

*United States v. Bruckmann,* 65 C.C.P.A. 90 (1978).................................................................. 10

*United States v. Charles R. Allen, Inc.*, 37 C.C.P.A. 110 (1950)................................................ 13

*United States v. General Hide & Skin Corp.*, 11 Ct. Cust. App. 78 (1921)................................. 11

*United States v. Pan Pac. Textile Group Inc.*, 27 C.I.T. 925 (2003) ............................................. 9

*Universal Electronics Inc. v. United States*, 112. F.3d 488 (Fed. Cir. 1997) ............................... 8

**Statutes**

28 U.S.C. § 2640....................................................................................................................... 7

**Other Authorities**

*New York Customs Ruling A86885 of September 5, 1996.* ......................................................... 16

*New York Customs Ruling C89229 of July 9, 1998* .................................................................. 16

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. GARY S. KATZMANN, JUDGE**

```
-------------------------------------------------------------------- X
SECOND NATURE DESIGNS LTD.,                    :
                                               :
          Plaintiff,                           :
                                               :
     v.                                        :         No. 17-cv-00271
                                               :
UNITED STATES,                                 :
                                               :
          Defendant.                           :
-------------------------------------------------------------------- X
```

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**</u>
<u>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**</u>

In accordance with Rule 56 of the Rules of the United States Court of International Trade ("USCIT R."), plaintiff Second Nature Designs Limited ("Second Nature" or "Plaintiff"), respectfully moves this Court for an order granting summary judgment in its favor, and awarding the relief sought in the Complaint. *See* ECF No. 7. Specifically, Plaintiff submits that Defendant, United States, though the United States Customs and Border Protection ("CBP or Customs"), improperly classified Plaintiff's imported dried botanicals in liquidation under Subheading 0604.90.60 of the Harmonized Tariff Schedule of the United States ("HTSUS"), which provides for "Foliage, branches and other parts of plants, without flowers or flower buds, and grasses, mosses and lichens, being goods of a kind suitable for bouquets or for ornamental purposes, fresh, dried, dyed, bleached, impregnated or otherwise prepared: Other: Other", dutiable at a rate of 7% *ad valorem*.

Plaintiff seeks a summary judgment determination that all eight categories of the subject dried botanicals ("the Subject Merchandise")—which are laid out in the parties joint motion for case management—are properly classified under subheading 0604.90.30, HTSUS, as "Foliage, branches and other parts of plants, without flowers or flower buds, and grasses, mosses and lichens,

being goods of a kind suitable for bouquets or for ornamental purposes, fresh, dried, dyed, bleached, impregnated or otherwise prepared: Other: Dried or bleached"; and when so classified, are duty free.

Defendant has proposed alternative classifications for certain of the goods at bar, presumably to assist this Court in its duty of finding the correct result, as directed by *Jarvis Clark Inc. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984). Defendant has also sought leave to impose counterclaims with respect to certain categories of merchandise. *See* ECF 92. Plaintiff has opposed that motion for leave, since (1) defendant has not demonstrate a statutory cause of action as to which a counterclaim might be asserted, and (2) the purported counterclaim is interposed in tardy fashion, and would prejudice plaintiff and unduly delay the litigation of this action. *See* ECF 95.

## SUMMARY OF ARGUMENT

The issues presented in this case, applicable to all of the merchandise at bar, is the proper classification of imported dried botanicals according to the Harmonized Tariff Schedule of the United States (HTSUS). General Rule of Interpretation 1 to the HTSUS indicates that "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes" and, "provided such headings or notes do not otherwise require," according to the subsequent General Rules of Interpretation ("GRI").

"When an imported item is classifiable based on application of GRI 1, recourse to the subsequent GRIs and the ARIs is unnecessary and inappropriate." *Airflow Tech., Inc. v. United States*, 35 C.I.T. 1540, 1546 (2011), citing *BASF Corp. v. United States*, 482 F.3d 1324, 1325-26 (Fed. Cir. 2007). Only if the headings and Section and Chapter Notes do not determine

classification does one look to the subordinate GRIs. *See Mita Copystar America v. United States,* 160 F.3d 710, 712 (Fed. Cir. 1998).

In this regard, all of the imported merchandise at issue falls squarely into 0604.90.30, HTSUS as Foliage, branches and other parts of plants, without flowers or flower buds, and grasses, mosses and lichens, being goods of a kind suitable for bouquets or for ornamental purposes, fresh, dried, dyed, bleached, impregnated or otherwise prepared: Other: Dried or Bleached under application of GRI 1. Under this subheading, the merchandise is duty free.

## STATEMENT OF FACTS

As required by USCIT R. 56.3, a Joint Statement of Material Facts Not in Dispute has been previously submitted by the parties. The essential facts recited in that statement are summarized herein.

The merchandise which is the subject of this action consists of various dried botanicals. After a lengthy discovery processes, the parties have agreed that there are 852 specific items at issue in this case and further separated these items into eight categories. These categories are explained in the parties' Joint Motion for the Entry of an Order Providing for Case Management Procedures and Dividing the Remainder of the Litigation into Two Phases (ECF 91) and the Joint Rule 56.3 Statement of Material Facts as to Which There are No Genuine Issues to be Tried submitted by the parties (ECF 91-1). The parties have agreed to ask for summary judgment on the items listed in the Rule 56.3 Statement as for each of the eight categories.[1] Further, the parties agree on the classification of the items in the Eighth Category under various subheadings of the HTSUS and the Government has represented to plaintiff that instead of stipulating the items it

---

[1] The parties will submit samples of some of the products issue before the close of summary judgement briefing.

would rather proceed by not opposing plaintiff's motion for summary judgment on the category.[2]
We request that the Court enter judgment on that merchandise in accordance with the parties'
agreement.

The first category of subject merchandise are products that the parties jointly agree are
articles of Heading 0604, HTSUS and which are dyed or bleached, and which have been dyed or
have had glitter or another coating applied to the product's exterior. There are 475 products which
fall into this category. *See* ECF 91-2. The representative products depicted in the Joint 56.3
statement are Item No. 00055, Pinecones - Large Champagne Glitter - Consumer Pack, Lotus Pods
White Wash - Bulk Pack Item #03379, Palm Reed Mahogany - Value Pack Item# 15731,  Banana
Stem White Wash, Value Pack, and Pinecones Large Snow Item # 64649. Pictures, descriptions
of these products can be found in the Joint 56.3 Statement at ¶¶6-11. Plaintiff submits that all of
these products are classifiable under Subheading 0604.90.30, HTSUS and duty free.

The second category of merchandise consist of an ornamental slice or stake of birch tree,
there are two products within this category. These are: Birch Slices – Consumer Pack, Item #3418
and Birch Stakes – Value Pack, Item #3422.  Pictures, descriptions of these products can be found
in the Joint 56.3 Statement at ¶¶12-14. Plaintiff submits that all of these products are classifiable
under Subheading 0604.90.30, HTSUS and duty free.

The third category of merchandise consist of products containing thin flat strips of colored
calamus plant shaped into decorative curls. There are thirty-four (34) products within this category.
The parties have agreed that Item No. 01694, Cane Spring Red Glitter - Bulk Pack may serve as a
representative style for the merchandise covered by category three. A picture and description of

---

[2] Plaintiff reserves the right to further brief this issue should the government change its mind and opposes the
classification of these products.

this products can be found in the Joint 56.3 Statement at ¶¶15-16. Plaintiff submits that all of these products are classifiable under Subheading 0604.90.30, HTSUS and duty free.

The fourth category of merchandise consist of thin flat strips of colored willow plaited into the shape of a triangle and impaled on a stick. There are four (4) products in this category. A representative style of this category of merchandise is Item No. 03322, Christmas Trees Gold Glitter - Consumer Pack. A picture and description of this products can be found in the Joint 56.3 Statement at ¶¶17-18. Plaintiff submits that all of these products are classifiable under Subheading 0604.90.30, HTSUS and duty free.

The fifth category of merchandise consist of styles of merchandise consisting of thin flat strips of plaited vegetable materials (other than willow or wood). There are thirty-three (33) products in this category. A representative style of this category of merchandise is Item No. 00210, Kambu Balls 8cm - Stemmed Red Glitter - Consumer Pack. A picture and description of this products can be found in the Joint 56.3 Statement at ¶¶19-20. Plaintiff submits that all of these products are prima facie classifiable under Subheading 0604.90.30, HTSUS and duty free.

The sixth category of merchandise consist of dried or bleached botanicals made to resemble flowers or fruit. There are fifty-nine (59) product styles. The parties have agreed that the following three styles are representative of this category of merchandise: Item No. 16236, Deco Flowers Yellow - Value Pack; Item No. 3229, Pumpkins - Stemmed Orange - Consumer Pack; and Item No. 00696, Sola Berries Red Glitter - Consumer Pack. Pictures, descriptions of these products can be found in the Joint 56.3 Statement at ¶¶21-25. Plaintiff submits that all of these products are classifiable under Subheading 0604.90.30, HTSUS and duty free.

The seventh category of merchandise consist of styles that contain more than one item. There are one hundred twenty-three (123) products in this category. The parties have agreed that

the following six items are representative of the category: (1) Item No. 00182, Deck The Halls Champagne Glitter – Bouquet; (2) Item No. 57170, Trick or Treat – Bouquet; (3) Item No. 40180, Pumpkin / Root Ball Mix Orange - Jumbo Bag; (4) Item No. 03347, Panchu Bouquet; (5) Item No. 51670, Root Ball Bouquet Item; and (6) Item No. 50970, Fall Harvest Bunch Bouquet. Pictures, descriptions of these products can be found in the Joint 56.3 Statement at ¶¶26-33. Plaintiff submits that all of these products are classifiable under Subheading 0604.90.30, HTSUS and duty free.

Category Eight contains 123 subject product styles for which the parties are in agreement concerning the correct tariff classification of the imported merchandise, as detailed in the paragraphs below. The parties believe that no further litigation is necessary with respect to the subject product styles in this Category, if the Court agrees with the parties' jointly proposed classifications.

## I.     Plaintiff's Subject Entries, Protest Filing, Protest Denial, Commencement of 28 U.S.C. § 1581(a) Action.

Between July 2015 and December 2016 Plaintiff imported into the United States the entries subject to this action. The entries liquidated between August 2015 and March 2017, following a NAFTA verification performed by CBP. CBP improperly classified Plaintiff's imported dried botanicals in liquidation under Subheading 0604.90.60 dutiable at 7% *ad valorem*.

Plaintiff filed timely protests with CBP asserting that all its imported merchandise was properly classified under subheading 0604.90.30, HTSUS, as "Foliage, branches and other parts of plants, without flowers or flower buds, and grasses, mosses and lichens, being goods of a kind suitable for bouquets or for ornamental purposes, fresh, dried, dyed, bleached, impregnated or otherwise prepared: Other [than fresh]; Other; Dried or bleached."

Plaintiff's protests were denied between March 2017 and October 2017.

6

Plaintiff commenced this action by the filing of a summons on November 17, 2017 (ECF 1) and Complaint on December 21, 2017(ECF 7).

## II.    Relevant Tariff Provisions

### Harmonized Tariff Schedule of the United States ("HTSUS")

### General Rules of Interpretation

Classification of goods in the tariff schedule shall be governed by the following principles:

> [1]The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the following provisions:

### Chapter 6

**Notes:**

**2.**  Any reference in heading 0603 or 0604 to goods of any kind shall be construed as including a reference to bouquets, floral baskets, wreaths and similar articles made wholly or partly of goods of that kind, account not being taken of accessories of other materials. However, these headings do not apply to collages or similar decorative plaques of heading 9701.

| Heading/ Subheading | Stat. Suffix | Article Description |
|---|---|---|
| 0604 | | Foliage, branches and other parts of plants, without flowers or flower buds, and grasses, mosses and lichens, being goods of a kind suitable for bouquets or for ornamental purposes, fresh, dried, dyed, bleached, impregnated or otherwise prepared: |
| 0604.90 | | Other |
| 0604.90.30 | | Dried or bleached |
| 0604.90.60 | | Other |

### STANDARD OF REVIEW

Customs' classification is subject to *de novo* review pursuant to 28 U.S.C. § 2640.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* USCIT R. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

This Court may resolve a classification issue by means of summary judgment. *See Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (reviewing CBP's classification decision *de novo* on the record made before it, 28 U.S.C. § 2640(a)(1)); *see also, Processed Plastic Co. v. United States*, 29 C.I.T. 1129, 1130 n.4 (2005), *aff'd*, 473 F.3d 1164 (Fed. Cir. 2006). Where there is no genuine dispute as to any material fact, on a motion for summary judgment, CBP will not receive the benefit of a presumption of correctness. *Id*. at 1131, n.5; *see also Universal Electronics Inc. v. United States*, 112. F.3d 488, 491 (Fed. Cir. 1997).

As with all classification issues, fundamentally "[t]he court's duty is to find the *correct* result," *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984) (emphasis in original), and thus, the ultimate question is "whether the merchandise is properly classified under one or another classification heading." *Simon Mktg. v. United States*, 29 C.I.T. 1111, 1117 (2005) (citation omitted).

Determining the correct classification of merchandise entails a two-step process where the court first construes the relevant classification headings—a purely legal question—and second, the court determines under which of the properly construed tariff terms the merchandise at issue falls. *Bausch & Lomb*, 148 F.3d at 1365; *Pillowtex Corp. v. United States*, 171 F.3d 1370, 1373 (Fed. Cir. 1999). Where the nature of the merchandise is not at issue, the question collapses entirely into a question of law ripe for disposition on summary judgment. *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006) (citations omitted).

In determining whether a genuine issue of fact exists, the court reviews the evidence submitted and draws all inferences against the nonmoving party. *United States v. Pan Pac. Textile Group Inc.*, 27 C.I.T. 925, 927 (2003); *see also, Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But even if there are "differences in the factual positions advanced by each party," summary judgment remains appropriate unless there are "genuine issues of material fact in dispute." *Chevron Chem. Co. v. United States*, 59 F. Supp. 2d 1361, 1363 (Ct. Int'l Tr. 1999).

## ARGUMENT

### I.     The Terms of Subheading 0604.90.30, HTSUS Accurately and Specifically Describe the Category 1 Merchandise

The General Rules of Interpretation ("GRIs") direct classification of merchandise under the HTSUS.  Pursuant to GRI 1, "classification shall be determined according to the terms of the headings and any relative section or chapter notes…"  All of the merchandise which is the subject of this action consist of parts of plants which have been dried or bleached.   Both Second Nature and Customs agree that products in this category of the subject merchandise are properly classified under Heading 0604 as foliage, branches and other parts of plants.  Thus, the question is whether the goods are more appropriately described as foliage, branches, and other parts of plants that are "dried or bleached," or under the basket provision as foliage, branches, and other parts of plants "other" than those that are dried or bleached. Stated another way, the question is whether decorative operations such as dyeing, painting or coating with glitter cause these products to be something other than "dried or bleached".

The answer to this question is virtually intuitive. Subheading 0604.90.30, HTSUS simply distinguishes those plants which have been "dried or bleached" from those which have not.  That is the sole distinction drawn between these tariff provisions.   The performing of additional

decorative operations to plants which have been dried or bleached does not remove them from that category of merchandise. They continued to be "dried or bleached", and described by subheading 0604.90.3000, and their classification thereunder is dictated by GRI of the HTSUS.

### A.    An Eo Nomine Provision of the HTSUS Covers All Forms of the Named Article

Classification of the subject merchandise under subheading 0604.90.30, HTSUS is further dictated by the canon of statutory construction that an eo nomine provision for an article covers all forms of the named article, in the absence of a contrary legislative intent.    An eo nomine designation is one which describes a commodity by a specific name, usually one well known in commerce. *United States v. Bruckmann,* 65 C.C.P.A. 90 (1978). Eo nomine designations are to be construed according to their common and commercial meanings, which are presumed to be the same. *Outer Circle Products Inc. v. United States,* 602 F. Supp. 2d 1294, 1306 (Ct. Int'l Trade 2009). Of prime importance here, an eo nomine designation, absent contrary legislative intent, is to be interpreted to include all forms of the named article. *Nootka Packing Co. v. United States*, 22 C.C.P.A. 464, 470 (1935); *Crosse & Blackwell Co. v. United States*, 36 C.C.P.A. 33, 35 (1948); *T.M. Duche & Sons, Inc. v. United States*, 44 C.C.P.A. 60, 63 (1957); *Sabritas v. United States*, 22 C.I.T. 59, 63 (1998).

Articles named within an eo nomine provision include articles which have been subjected to a variety of processing steps, even processing steps not identified in the tariff provision, so long as their identity as the named article has not been destroyed and they have not been converted into something else.   *In Nootka Packing, supra*, a product consisting of minced razor claim meat, which had been processed and packed in salt brine, was held classifiable under a tariff provision covering "Clams, clam juice, or either in combination with other substances, packed in airtight containers." The court held that the performance of additional processes to the clams, such as removal of

entrails, cleaning, and further processing, did not remove them from the scope of the tariff provision. The articles were still recognizable as "clams" and included in the tariff provision. The Court cited a long line of tariff precedents for the proposition that "where an article is designated without words of limitation, that designation will generally include the article in all its forms known to commerce." *See United States v. General Hide & Skin Corp*., 11 Ct. Cust. App. 78, 80 (1921).

In *Crosse & Blackwell, supra*, imported turpentine mangoes were sliced, pickled and packed in brine prior to importation. They were not edible as mangoes when fresh (the turpentine mango apparently having an unpleasant scent) and the sliced, picked mangoes were used as an ingredient in making chutney.   Nonetheless, the court held that the imported goods were recognizable as mangoes, and fell within the eo nomine provision for same, notwithstanding the additional processing operations of slicing, pickling and brining.

The *T.M. Duche & Sons case, supra*, involved the classification of orange pulp and peel which had been separated, cooked separately, and then packed together for use in the production of marmalade. The Court of Appeals held that the additional processing steps did not remove them from the common and commercial definition of "oranges" and thus they were classifiable under a provision for oranges.

Coloring an item, as Second Nature does here, will not remove the item from the scope of an eo nomine provision. This is the teaching of *Robert G. Lynch Co. v. United States,* 49 C.C.P.A. 74, 80-81 (1962), where a product called "sweet green livestock sugar," consisting of sugar which had been colored green, was held to be included within the eo nomine provision of the tariff covering "sugar".   The court held that there was no contrary legislative intent that would exclude the sugar from the eo nomine provision for same, simply because it had been colored and tumbled

through a screen. In like manner here, Second Nature's imported dried plants do not cease to be covered by the tariff language for "dried" plants simply because they have been colored and decorated.

Additional processing performed to an article will not remove it from the scope of a tariff heading which describes it. Thus in *A.N. Deringer Inc. v. United States*, 10 C.I.T. 577, 585 (1986), barium sulfite (barytes) which had been subjected to an acid leaching process, was held classifiable under the eo nomine provision for ground barium sulfite. The court noted that the chemical composition of the barytes was not changed by the leaching process even though a purer grade of baryte was thereby produced.

An improvement in an article designated eo nomine in the tariff does not remove it from the eo nomine classification, absent some other manifest legislative intent. Thus, for example, v-grooving the edge of plywood panels, so that they can be laid against each other without the edges being detected, did not cause the merchandise to lose its identity as plywood. It remained classifiable in that eo nomine provision. *C.T. Takahashi & Co. v. United States*, 74 Cust. Ct. 38, 46 (1975). Similarly, in *American Hardboard Assn. v. United States*, 12 C.I.T. 714, 717 (1988), a tariff provision for "hardboard, whether or not face finished" was held to cover hardboard which had undergone "face finishing" treatment, but not to cover plywood which had been cut to size, machined to specifications and attached to a plastic spine – and which thereby had acquired the character of a different article

In this case, the eo nomine provision of subheading 0604.90.30, HTSUS contains a specific descriptive requirement, to wit, that the plants in question must be "dried or bleached". The provision will not cover all decorative plants, but will cover those plants which have been "dried," as Second Nature's products have been, or "bleached." *United States v. Charles R. Allen, Inc*., 37

C.C.P.A. 110, 121 (1950).   An eo nomine provision for an article covers even an improved or advanced version of the article, provided the improvement or advancement does not remove the article from the scope of the classification. *THK America Inc. v. United States*, 837 F. Supp. 427, 434 (Ct. Int'l Trade 1993).

Second Nature's imported products are "dried" plants. That they have been painted or decorated does not change their nature as "dried" plants, nor remove them from the scope of subheading 0604.90.30, HTSUS. They remain suitable for decorative uses, and the parties agree they are in fact so used. There is no legislative history which indicates an intent to further limit the scope of the subheading beyond its terms.

In sum, the tariff term "other dried or bleached" foliage or branches is an eo nomine provision, meaning that it includes all forms of dried or bleached foliage or branches. *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999) ("An eo nomine designation with no terms of limitation, will ordinarily include all forms of the named article"). (citations omitted). Subheading 0604.90.3000, HTSUS therefore includes dried or bleached foliage or branches that have glitter, lacquer, paint, or some other type of embellishment as such additions do not change  the fundamental character of the merchandise.  *GRK Can., Ltd. v. United States*, 761 F.3d 1354, 1360-61 (Fed. Cir. 2014) ("an eo nomine classification within HTSUS must capture all forms of a named good, including improvements that do not change the essential characteristic of the articles").   A layer of paint or a smattering of glitter does not transform the merchandise to something other than dried or bleached foliage, but rather embellishes the exterior or façade of the product.  The foliage or branch is still dried or bleached under the layer of paint, lacquer, glitter, or other adornment.  The embellishments do not rehydrate the product, nor do they undo the bleaching process.

13

The embellishments or adornments are added so as to improve the appearance of the goods or the marketability of the products in certain seasons such as Halloween or Christmas.  Glitter, paint, lacquer and other additions added for aesthetic purposes do not alter the essential character nor remove the products dried or bleached characteristics so as to necessitate classification under a less specific basket provision. *Casio, Inc. v. United States,* 73 F.3d 1095, 1098 (Fed. Cir. 1996) ("an article which has been improved or amplified but whose essential characteristic is preserved or only incidentally altered is not excluded from an unlimited eo nomine statutory designation")

**B.    To the Extent Subheading 0604.90.30, HTSUS Applies, Subheading 0604.90.60, HTSUS Does Not**

Classification under subheading 0604.90.30 is further apparent when the alternative classification is taken into consideration.  Subheading 0604.90.6000, HTSUS, which provides for "other" foliage, branches, and parts of plants, is a "basket" provision.  Classification under such a residual provision is proper only if the merchandise is not specified or included elsewhere  in the HTSUS.   *See EM Indus. v. United States*, 22 C.I.T. 156, 165 (1998) ("Basket or residual provisions of HTSUS…are intended as a broad catch-all to encompass the classification of articles for which there is no more specifically applicable subheading"); *see also Apex Universal v. United States*, 22 C.I.T. 465, (1998) ("Classification of imported merchandise in a basket provision is appropriate only when there is no tariff category that covers the merchandise more specifically) (citations omitted).  The goods are specifically provided for in 0604.90.3000, as dried or  bleached goods, rendering classification under the basket provision of Heading 0604 unacceptable and prohibited.

Moreover, classification under the basket provision that provides for foliage, branches, and other parts of plants *other* than those dried or bleached would be an absurd result since the goods are in fact dried or bleached before and after being adorned with glitter, paint, or lacquer.  A more

reasonable and correct interpretation of the tariff would be that the "other" provision of subheading 0604.90.6000, HTSUS was created for foliage, branches, and other parts of plants, that have NOT been either dried or bleached.  Indeed, to interpret the subheading 0604.90.6000, HTSUS as to cover dried or bleached products that have some additional adornment such as glitter or paint would read 0604.90.3000 out of the tariff entirely or have the effect of making both subheadings redundant.  Yet, Congress enacted both subheadings with purpose.  Customs' present interpretation ignores legislative intent and flies in the face of the rule of statutory construction to avoid surplusage.

## II.   The Terms of Subheading 0604.90.30, HTSUS Accurately and Specifically Describe the Category 2 Products

The second category consists of Birch Slices – Consumer Pack, Item #3418 and Birch Stakes – Value Pack, Item #3422.  These items consist of the dried stakes of birch trees mounted on sticks. Plaintiff puts forth that this article is properly classified in subheading 0604.90.30 because it is a dried or bleached botanical. Subheading 0604 specifically states "branches and other parts of plants", which is an exact description of the birch at issue in this category. The two items are issue are literally parts of the branch of a birch tree. As such they are encompassed under heading 0604. In addition because they are dried they are classifiable under subheading 0604.90.30.

The Government argues that the article is properly classified under subheading 4420, HTSUS as: Wood marquetry and inlaid wood; caskets and cases for jewelry or cutlery and similar articles, of wood; statuettes and other ornaments, of wood; wooden articles of furniture not falling within chapter 94: Statuettes and other ornaments." The application of such a classification is nonsensical; the article is just a piece of dried birch wood, and it is entirely encompassed in the description of subheading 0604.90.30, as a dried botanical. Nothing is done to the wood besides

drying it. None of the artistry of craftsmanship necessary for wood to be marquetry, inlaid, caskets, cases for jewelry or cutely, a statuette or ornament have been done to these parts of the birch tree[3]. They are literally dried pieces of birch branch. As such classification under subheading 4420 is inappropriate and classification under subheading 0604.90.30, HTSUS is correct.

### III.   The Terms of Subheading 0604.90.30, HTSUS Accurately and Specifically Describe the Category 3 Merchandise

The third category of merchandise consists of products containing thin flat strips of colored calamus plant shaped into decorative curls. There are thirty-four (34) products within this category. The parties have agreed that Item No. 01694, Cane Spring Red Glitter - Bulk Pack may serve as a representative style for the merchandise covered by category three. A picture and description of this products can be found in the Joint 56.3 Statement at ¶¶15-16. Plaintiff submits that all of these products are classifiable under Subheading 0604.90.30, HTSUS and duty free.

These products plainly consist of dried and colored strips of the calamus plant. That the articles are shaped into curls has no bearing on the classification of the product, because the articles, simply put, parts of dried botanicals. Under simple application on GRI 1 parts of dried botanicals are classified in subheading, 0604.90.30 HTSUS.

The Government argues that the article is properly classified as under, subheading 4602, HTSUS as: Basketwork, wickerwork and other articles, made directly to shape from plaiting materials or made up from articles of heading 4601; articles of loofah:" The Heading referenced

---

[3] "Marquetry" is defined by the *Merriam-Webster Dictionary* as "decorative work in which elaborate patterns are formed by the insertion of pieces of material (such as wood, shell or ivory) into a wood veneer that is then applied to a surface (as of a piece of furniture)." These birch slices do not come close to conforming to that definition. Customs' own rulings recognize that marquetry requires "intricate designs and patterns made exclusively by arranging and gluing pieces of wood", *New York Customs Ruling C89229 of July 9, 1998*, and covers items such as root woods which are cut to shape and size by an artist, cleansed with a torch, and then sanded and stained for decorative purposes. See *New York Customs Ruling A86885 of September 5, 1996*.

4601 reads "Plaits and similar products of plaiting materials, whether or not assembled into strips; plaiting materials, plaits and similar products of plaiting materials, bound together in parallel strands or woven, in sheet form, whether or not being finished articles (for example, mats, matting, screens)".

As an initial matter the product is not the product of a good from heading 4601.  The Merriam-Webster Dictionary defines "plainting" as "the interlacing of strands: BRAIDING". Dictionary. Com defines "plaiting" as "anything that is braided or pleated." None of the products in Category 3 has been braided or pleated in any way. The products are plainly and dried botanicals, as such under GRI 1 they should be classified in subheading 0604.90.30

## IV. The Terms of Subheading 0604.90.30, HTSUS Accurately and Specifically Describe the Category 4 Merchandise

The fourth category of merchandise consist of thin flat strips of colored willow plaited into the shape of a triangle and impaled on a stick. There are four (4) products in this category. A representative style of this category of merchandise is Item No. 03322, Christmas Trees Gold Glitter - Consumer Pack. A picture and description of this products can be found in the Joint 56.3 Statement at ¶¶17-18.

Plaintiff submits that all of these products are classifiable under Subheading 0604.90.30, HTSUS and duty free. They do represent parts of plants, not fresh, dried or bleached. The sticks to which they are attached are also produced from parts of plants. They are used for decorative purposes. The sticks which are attached to them remove the goods from classification as mere

"plaiting" or "articles of plaiting". They are nothing more than dried or bleached parts of plants, put up for decorative purposes.[4]

## V.   The Terms of Subheading 0604.90.30, HTSUS Accurately and Specifically Describe the Category 5 Merchandise

The fifth category of merchandise consist of styles of merchandise consisting of thin flat strips of plaited vegetable materials (other than willow or wood). There are thirty-three (33) products in this category. A representative style of this category of merchandise is Item No. 00210, Kambu Balls 8cm - Stemmed Red Glitter - Consumer Pack. A picture and description of this products can be found in the Joint 56.3 Statement at ¶¶19-20. Plaintiff submits that all of these products are classifiable under Subheading 0604.90.30, HTSUS and duty free.

The articles in question are not "plaited" – that is they are not braided. Rather, the dried or bleached plant parts are wound in circular shapes so as to form an article which has the shape of a ball. These articles are attached to sticks, and sold for decorative use. Here again, plaintiff will reserve responding the defendant's alternative classification claims until defendant has articulated its claims and the supporting rationale therefor.

## VI.   The Terms of Subheading 0604.90.30, HTSUS Accurately and Specifically Describe the Category 6 Merchandise

The sixth category of merchandise consist of articles made to resemble flowers or fruit. There are fifty-nine (59) product styles. The parties have agreed that the following three styles are representative of this category of merchandise: Item No. 16236, Deco Flowers Yellow - Value

---

[4] As a general matter, plaintiff will respond to defendant's alternative classification claims in its Reply, after defendant has articulated its basis for these claims.

Pack; Item No. 3229, Pumpkins - Stemmed Orange - Consumer Pack; and Item No. 00696, Sola Berries Red Glitter - Consumer Pack. Pictures, descriptions of these products can be found in the Joint 56.3 Statement at ¶¶21-25. Plaintiff submits that all of these products are classifiable under Subheading 0604.90.30, HTSUS and duty free.

The government proposes to classify these goods under subheading 6702.90.65, HTSUS as "artificial flowers or fruit". However, there is nothing artificial about them; they are made exclusively from natural parts of plants, which have been dried or bleached. That they have been worked into specific shapes, reminiscent of fruits or flowers – generally in miniature – does not constitute them as artificial fruits or flowers" for tariff purposes. They remain parts of plants, dried or bleached, which are used for decorative purposes, and classifiable in subheading 0604.90.30, HTSUS.

**VII.    The Terms of Subheading 0604.90.30, HTSUS Accurately and Specifically Describe the Category 7 Merchandise**

The seventh category of merchandise consist of styles that contain more than one item. There are one hundred twenty-three (123) products in this category. The parties have agreed that the following six items are representative of the category: (1) Item No. 00182, Deck The Halls Champagne Glitter – Bouquet; (2) Item No. 57170, Trick or Treat – Bouquet; (3) Item No. 40180, Pumpkin / Root Ball Mix Orange - Jumbo Bag; (4) Item No. 03347, Panchu Bouquet; (5) Item No. 51670, Root Ball Bouquet Item; and (6) Item No. 50970, Fall Harvest Bunch Bouquet. Pictures, descriptions of these products can be found in the Joint 56.3 Statement at ¶¶26-33. Plaintiff submits that all of these products are classifiable under Subheading 0604.90.30, HTSUS and duty free.

These products which contain one or more item as classified under Subheading 0604.90.30, HTSUS as dried botanicals. The classification of these products is governed by the instruction in Note 2 to Chapter 6, HTSUS. This note commands that:

> Any reference in heading 0603 or 0604 to goods of any kind shall be construed as including a reference to bouquets, floral baskets, wreaths and similar articles made wholly or partly of goods of that kind, account not being taken of accessories of other materials. However, these headings do not apply to collages or similar decorative plaques of heading 9701.

Under the note, any good classified in subheading 0604 shall include bouquets, floral baskets, wreaths and similar articles and account shall not be taken of accessories of other material.

However, in asserting alternative classifications and in its proposed counterclaims, the defendant completely ignores the text of this note, proposing instead to treat these goods as "composite goods" whose classification must be determined in accordance with General Rules of Interpretation 3(b) and (c) of the HTSUS. This approach is incorrect, since Chapter 6, Note 2 allows these bouquets and mixtures to be classified using GRI 1.

General Rule of Interpretation 1 to the HTSUS indicates that "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes" and, "provided such headings or notes do not otherwise require", according to the subsequent General Rules of Interpretation ("GRI"). The first inquiry, therefore, is whether it is possible to classify bouquets containing dried or bleached parts of plants under General Rule 1. Note 2 to Chapter 6 specifically disposes of this issue, indicating that subheading 0604.90.30 covers "bouquets, floral baskets, wreaths and similar articles made wholly or partly of goods of that kind", with no account taken of "accessories of other materials". The note – a controlling statutory provision – allows the classification of bouquets and other items consisting wholly or partly of the goods of heading 0604 in that heading, pursuant to GRI 1. It makes irrelevant the provisions of GRI 3, such as the need to identify an "essential character" component under GRI 3(b) or to hunt for the provision occurring last in numerical order in accordance with GRI 3(c).

"When an imported item is classifiable based on application of GRI 1, recourse to the subsequent GRIs and the ARIs is unnecessary and inappropriate". *Airflow Tech., Inc. v. United States*, 35 C.I.T. 1540, 1546 (2011), citing *BASF Corp. v. United States*, 482 F.3d 1324, 1325-26 (Fed. Cir. 2007). Only if the headings and Section and Chapter Notes do not determine classification does one look to the subordinate GRIs. *See Mita Copystar America v. United States,* 160 F.3d 710, 712 (Fed. Cir. 1998). It is well-established that if GRI 1 resolves the classification of a product, the court is not to look to other GRIs. *LeMans Corp. v. United States*, 660 F.3d. 1311, 1316 (Fed. Cir. 2011).

Note 2 to HTS Chapter 6 specifically governs the classification of bouquets, wreaths and similar collections including goods of heading 0604, and makes resort to GRI 3 both unnecessary and inappropriate.

## VIII.   Agreed Upon Classification for Category 8 of the Merchandise

Category Eight contains 123 subject product styles for which the parties are in agreement concerning the correct tariff classification of the imported merchandise, as detailed in the joint 56.3 statement. *See ECF 91-1* at 25-28. The parties believe that no further litigation is necessary with respect to the subject product styles in this Category, if the Court agrees with the parties' jointly proposed classifications. *See* Supplemental Affirmation of Steve Koning, attached hereto.

## <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff, Second Nature Designs, Ltd. respectfully submits that summary judgment should be entered in its favor, classifying the subject dried botanicals under subheading 0604.90.30, HTSUS and should be reliquidated duty free.

Respectfully submitted,

/s/ John M. Peterson
John M. Peterson
Patrick B. Klein
NEVILLE PETERSON LLP
*Counsel for Plaintiff*
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated:  June 13, 2022

22

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. GARY S. KATZMANN, JUDGE**

```
---------------------------------------------------------------------- X
SECOND NATURE DESIGNS LTD.,                       :
                                                  :
              Plaintiff,                           :
                                                  :
       v.                                          :        No. 17-cv-00271
                                                  :
UNITED STATES,                                     :
                                                  :
              Defendant.                           :
---------------------------------------------------------------------- X
```

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to the U.S. Court of International Trade Standard Chambers Procedures, and in reliance upon the word count feature of the word processing program used to prepare the instant Memorandum, I, Patrick B. Klein, of Neville Peterson LLP, who is responsible for the instant Memorandum, certify that it contains 6,396 words.

Respectfully submitted,

/s/ Patrick B. Klein
       Patrick B. Klein