UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

_____
                              :
SECOND NATURE DESIGNS, LTD.,      :
                              :
                Plaintiff,    :          Court No. 17-00271
                              :
             v.                   :
                              :
UNITED STATES,                  :
                              :
              Defendant.   :
_____:

**DEFENDANT'S REPLY MEMORANDUM IN FURTHER
<u>SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

                            BRIAN M. BOYNTON
                            Principal Deputy Assistant Attorney General

                            PATRICIA M. McCARTHY
                            Director

                            JUSTIN R. MILLER
                            Attorney-In-Charge
                            International Trade Field Office

*Of Counsel*:                        BRANDON A. KENNEDY
Alexandra Khrebtukova          Trial Attorney
Senior Attorney                 Civil Division, U.S. Dept. of Justice
Office of the Assistant Chief Counsel    Commercial Litigation Branch
International Trade Litigation       26 Federal Plaza, Room 346
U.S. Customs and Border Protection     New York, New York 10278
New York, New York 10278         Tel.: (212) 264-9230
                            *Attorneys for Defendant*

Dated: March 15, 2023

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT ..........................................................................................................................2

   **I.**    THE STYLES OF MERCHANDISE IN CATEGORY ONE--- ARTICLES OF HEADING 0604 HAVING GLITTER OR ANOTHER COATING APPLIED TO THEIR EXTERIOR, AND/OR HAVING BEEN DYED—ARE APPROPRIATELY CLASSIFIED  IN SUBHEADING 0604.90.60, HTSUS ................................................................2

   **II.**   THE STYLES OF MERCHANDISE IN CATEGORY THREE—CONSISTING OF THIN FLAT STRIPS OF COLORED CALAMUS PLANT SHAPED INTO DECORATIVE CURLS—ARE APPROPRIATELY CLASSIFIED IN SUBHEADING 4602.12.45, HTSUS .........................................................................15

   **III.**  THE STYLES OF MERCHANDISE IN CATEGORY FOUR—CONSISTING OF THIN FLAT STRIPS OF COLORED WILLOW PLAITED INTO THE SHAPE OF A TRIANGLE AND IMAPLED ON A STICK—ARE APPROPRIATELY CLASSIFIED IN  SUBHEADING 4602.19.45, HTSUS .............................................................18

   **IV.**  THE STYLES OF MERCHANDISE IN CATEGORY FIVE—CONSISTING OF THIN FLATS STRIPS OF PLAITED VEGETABLE MATERIALS (OTHER THAN WILLOW OR WOOD)—ARE APPROPRIATELY CLASSIFIED IN SUBHEADING 4602.19.80, HTSUS ...........................................................................20

   **V.**   THE STYLES OF MERCHANDISE IN CATEGORY SIX—ARTICLES HANDMADE TO RESEMBLE FLOWERS OR FRUIT—ARE APPROPRIATELY CLASSIFIED IN SUBHEADING 6702.90.65, HTSUS ...........................................................22

   **VI.**  THE STYLES OF MERCHANDISE IN CATEGORY SEVEN—COMPOSITE STYLES CONTAINING MORE THAN ONE ITEM—ARE APPROPRIATELY CLASSIFIED PURSUANT TO GRI 3(B) OR (C) ...................................................................25

CONCLUSION .....................................................................................................................29

i

# TABLE OF AUTHORITIES

## Cases

*Apple Inc. v. United States*,
964 F.3d 1087 (Fed. Cir. 2020)............................................................16, 18, 23, 24, 28

*CamelBak Prods., LLC v. United States*,
649 F.3d 1361 (Fed. Cir. 2011)............................................................................11

*Casio, Inc. v. United States*,
73 F.3d 1095 (Fed. Cir. 1996)...........................................................................9, 11

*Chemtall, Inc. v. United States*,
878 F.3d 1012 (Fed. Cir. 2017)............................................................................ 13

*E.T. Horn Co. v. United States*,
945 F.2d 1540 (1991).....................................................................................6, 8, 9

*EOS of N. Am. v. United States*,
911 F.Supp.2d 1311 (Ct. Int'l Trade 2013)................................................................5

*GRK Can., Ltd. v. United States*,
885 F.3d 1340 (Fed. Cir. 2018)..............................................................................6

*Home Depot U.S.A., Inc. v. United States*,
915 F.3d 1374 (Fed. Cir. 2019)......................................................................*passim*

*Hub Floral Corp. v. United States*,
422 F.Supp. 283 (Ct. Cust. 1976) ..........................................................................24

*Rollerblade, Inc. v. United States*,
282 F.3d 1349 (Fed. Cir. 2002)........................................................3, 11, 12, 14, 27

*THK America Inc. v. United States*,
837 F.Supp. 427 (Ct. Int'l Trade 1993).....................................................................7

*United States v. Charles R. Allen Inc.*,
37 C.C.P.A. 110 cert. denied, 340 U.S. 818 (1950)..................................................7, 8

*Victoria's Secret Direct, LLC, v. United States*,
37 C.I.T. 573 fn 29 (2013) ...................................................................................14

*Well Luck Co., Inc. v. United States*,
887 F.3d 1106 (Fed. Cir. 2018)........................................................3, 11, 13, 14

**Harmonized Tariff Schedule of the United States**

General Rule of Interpretation 1 ........................................................................................2, 8

General Rule of Interpretation 3 ......................................................................................26, 28

General Rule of Interpretation 3(a) ....................................................................................*passim*

General Rule of Interpretation 3(b) ....................................................................................*passim*

General Rule of Interpretation 3(c) ............................................................1, 25, 26, 28, 29

General Rule of Interpretation 6 ........................................................................................2, 8

Chapter 6

    Heading 0603 .............................................................................................25, 26, 27, 28

    Heading 0604 ................................................................................................*passim*

    Subheading 0604. 20. 00 ...........................................................................3, 5, 12

    Subheading 0604.20.0020 ................................................................................10

    Subheading 0604.90.30 ..................................................................................*passim*

    Subheading 0604.90 .......................................................................................5, 6

    Subheading 0604.90. 10 .............................................................................5, 6, 10

    Subheading 0604.90.60 ..................................................................................*passim*

Note 2 ...................................................................................................25, 26, 27, 28

Explanatory Note 06.04 (2012) ..........................................................................................27

Chapter 46

    Heading 4601 ....................................................................................................*passim*

    Subheading 4601.93 .............................................................................................16

    Heading 4602 ....................................................................................................*passim*

    Subheading 4602. 12. 45 ...........................................................................1, 15, 16, 18

    Subheading 4602.19.45 ................................................................................18, 19, 20

    Subheading 4602.19.60 .............................................................................................17

    Subheading 4602.19.80 ...........................................................................1, 20, 21, 22

Chapter 67

    Heading 6702 .................................................................................................23, 24, 25,

      Subheading 6702.90.65 ...............................................................................1, 22, 23

## Other Authorities

FRESH, *Collins Dictionary*, available at
https://www.collinsdictionary.com/us/dictionary/english/fresh ............................................................5

FRESH, *Britannica,* available at
https://www.britannica.com/dictionary/fresh.......................................................................................5

CHLORINE BLEACH, *Peppers Home Garden*, available at
https://peppershomeandgarden.com/bleach-kill-tree/...............................................................6

HQ 951403 (Oct. 27, 1992) ...........................................................................................20, 22

HQ 958552 (Jan. 1, 1996)........................................................................................................22

HQ 083283 (Jan. 8, 1996)..............................................................................................20, 22

HQ 957995 (Aug. 7, 1995) ......................................................................................................22

HQ H063640 (Aug. 3, 2009) .........................................................................................20, 22

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

_____
                                                :
SECOND NATURE DESIGNS, LTD.,                     :
                                                :
                    Plaintiff,                   :          Court No. 17-00271
                                                :
            v.                                   :
                                                :
UNITED STATES,                                   :
                                                :
                    Defendant.                   :
_____         :

### DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant, the United States (the Government), submits this memorandum in reply to plaintiff's, Second Nature Designs, Ltd. (Second Nature), response to our cross-motion for partial summary judgment. As further shown below, partial summary judgment in favor of defendant is appropriate because there are no genuine issues of material fact, and the undisputed facts show that defendant is entitled to judgment in its favor as a matter of law.

### INTRODUCTION

In our cross-motion, we established the proper classification for the various styles of merchandise in each category. The undisputed facts show that the product styles in Categories One, Three, Four, Five, and Six are properly classified under five different tariff subheadings (*i.e.*, 0604.90.60, 4602.12.45, 4602.19.45, 4602.19.80, and 6702.90.65, respectively) of the Harmonized Tariff Schedule of the United States (HTSUS). The terms of these five subheadings wholly and specifically describe the physical features and components of the respective merchandise, and the provision advocated for by Second Nature (subheading 0604.90.30, HTSUS) does not. Further, the product styles in Category Seven, which consist of composite

styles containing more than one type of item, are composite goods which must be classified pursuant to the framework of HTSUS General Rule of Interpretation (GRI) 3(b) or (c), and not under subheading 0604.90.30, HTSUS, as Second Nature maintains.  Finally, the parties agree as to the classification of product styles in Categories Two and Eight.

## **ARGUMENT**

**I.      THE STYLES OF MERCHANDISE IN CATEGORY ONE—ARTICLES OF HEADING 0604 HAVING GLITTER OR ANOTHER COATING APPLIED TO THEIR EXTERIOR, AND/OR HAVING BEEN DYED—ARE APPROPRIATELY CLASSIFIED IN SUBHEADING 0604.90.60, HTSUS**

Second Nature maintains that all four hundred seventy-five (475) product styles in Category One, which consist of dried foliage, branches or other parts of plants, without flower buds, or grasses, that have glitter or another coating applied to their exterior, and/or have been dyed, are classified in subheading 0604.90.30, HTSUS.  Pl. Reply Br., 2.  Second Nature is wrong.

Pursuant to GRIs 1 and 6, classification shall be determined according to the terms of the headings and subheadings.  Heading 0604 provides for "[f]oliage, branches and other parts of plants, without flowers or flower buds, and grasses, mosses and lichens, being goods of a kind suitable for bouquets or for ornamental purposes, fresh, dried, dyed, bleached, impregnated or otherwise prepared."  The parties agree that the imported merchandise in Category One is classified in heading 0604, but disagree as to the appropriate subheading.  The tariff statute is reproduced as follows:

**HTSUS Heading 0604**

| 0604 | | Foliage, branches and other parts of plants, without flowers or flower buds, and grasses, mosses and lichens, being goods of a kind suitable for bouquets or for ornamental purposes, fresh, dried, dyed, bleached, impregnated or otherwise prepared: |
|---|---|---|
| 0604.20.00 | | Fresh............................................ |
| | 10 | Mosses and lichens......................... |
| | | Evergreen Christmas trees: |
| | 20 | Douglas fir.................................. |
| | 40 | Fir except Douglas fir.................. |
| | 60 | Other....................................... |
| | 80 | Other............................................ |
| 0604.90 | | Other: |
| 0604.90.10 | 00 | Mosses and lichens......................... |
| | | Other: |
| 0604.90.30 | 00 | Dried or bleached...................... |
| 0604.90.60 | 00 | Other....................................... |

The last several terms of heading 0604 enumerate processes that may be applied to the articles of the heading: "fresh, dried, dyed, bleached, impregnated or otherwise prepared."  Each of these processes must be accounted for amongst the various subheadings that appear below the heading, in order to avoid rendering these statutory terms null.  The term "fresh" is accounted for in subheading 0604.20.00 ("Fresh").  The terms "dried" and "bleached" are accounted for in subheading 0604.90.30 ("Dried or bleached") (other than mosses and lichens).  But the terms "dyed," "impregnated" and "otherwise prepared" are not specifically accounted for in their own subheadings.

"[W]here merchandise properly is classified under a particular heading but does not fall within a specific subheading, it properly is classified under the relevant heading's 'basket' or 'catch-all' provision."  *Rollerblade, Inc. v. United States*, 282 F.3d 1349, 1354 (Fed. Cir. 2002); *see also Well Luck Co., Inc. v. United States*, 887 F.3d 1106, 1117 (Fed. Cir. 2018) (holding that, because the subject merchandise did not fall within any of the eight-digit level subheadings

3

preceding the HTSUS subheading with the term "other", it is properly classified under the "other" subheading). Consequently, the terms "dyed," "impregnated" and "otherwise prepared" are accounted for under heading 0604's basket or catch-all provision, which is subheading 0604.90.60 ("…Other"). Here, the undisputed facts for the merchandise of Category One show that they are properly classified under subheading 0604.90.60.

Second Nature argues that the additional processes performed on the styles of Category One, such as dying or glittering, do not remove them from subheading 0604.90.30. Pl. Reply Br., 1. But Second Nature is incorrect.

Second Nature's analysis is misguided because subheading 0604.90.30 (which covers "dried or bleached" articles of heading 0604 that are other than mosses or lichens), does not describe the physical characteristics of the styles of Category One in their totality, and therefore they cannot be classified in this provision. A good is classified in a tariff provision by operation of GRI 1 (which applies also at the subheading level by operation of GRI 6) when that tariff provision describes the article "in whole." *Home Depot U.S.A., Inc. v. United States*, 915 F.3d 1374, 1380 (Fed. Cir. 2019) ("[W]hen an imported article is ***described in whole*** by a single classification heading or subheading, then that single classification applies, and the succeeding GRIs are inoperative.") (internal citations omitted) (emphasis added). Here, it is undisputed that the styles of Category One are not solely dried or bleached, but are also glittered, coated and/or dyed. Consequently, subheading 0604.90.30 describes only *part* of the processing performed on the merchandise of Category One and does not describe the merchandise "in whole."

Second Nature describes subheading 0604.90.60 as covering "plants 'other' than dried or bleached." Pl. Reply Br., 4. But this interpretation misses the mark because it fails to consider the common meaning of the tariff term "fresh" as it relates to the surrounding terms of the

4

heading.  All goods classified under heading 0604 are divided into two initial subheadings: 0604.20.00 ("Fresh"), or 0604.90 ("Other").  The term "fresh" has several meanings, but within the context of heading 0604—which refers to certain plants and parts of plants used for ornamental purposes—the most appropriate definition for fresh is not dry.  *See, e.g.*, https://www.collins dictionary.com/us/dictionary/english/fresh ("Fresh paint is not yet dry.") (last viewed on December 16, 2022); https://www.britannica.com/dictionary/fresh ("1a: newly produced, made, gathered, etc.: not preserved by being frozen, canned, etc."; "You can use either *fresh* or dried basil for this recipe.") (last viewed on March 8, 2023).

"Where a tariff term has various definitions or meanings and has broad and narrow interpretations, the court must determine which definition best invokes the legislative intent." *EOS of N. Am. v. United States*, 911 F.Supp.2d 1311, 1318 (Ct. Int'l Trade 2013) (internal citation omitted).  Here, as heading 0604 covers ornamental plant-based articles, the most appropriate definition for fresh is "not dry."  And consequently, any plant-based article covered by heading 0604 that is in a dried condition—*i.e.*, non-fresh— must be classified under subheading 0604.90 (the provision identified at the six-digit level as "Other").

Similarly, this criterion (*i.e.*, that the items classified under subheading 0604.90 must be non-fresh) equally applies to the other provisions that fall below subheading 0604.90.  In other words, ***all*** goods classified under any of the subheadings beneath 0604.90, *i.e.*, 0604.90.10 ("Other: Mosses and lichens"), 0604.90.30 ("Other: Other: Dried or bleached"), and 0604.90.60 ("Other: Other: Other"), must be non-fresh, and therefore, by definition, be in a dried condition.

Second Nature argues that subheadings 0604.90.30 and 0604.90.60 are "mutually exclusive" and "[o]nce the conditions for classification in subheading 0604.90.30, HTSUS, are

met…classification in the 'other' provision of subheading 0604.90.60, HTSUS, is precluded."

Pl. Reply Br., 4 (*citing*, *e.g.*, *E.T. Horn Co. v. United States*, 945 F.2d 1540, 1544 (1991)).

But again, this argument disregards the structure of heading 0604 and the plain meaning of its terms. As we describe above, all goods classified under any of the subheadings below 0604.90 must be non-fresh and therefore, by definition, be in a dried condition. In other words, all non-fresh mosses or lichens that fall under subheading 0604.90.10, must be in a dried condition. Similarly, all foliage, branches, or plant parts (that are not mosses or lichens) that fall under subheading 0604.90.30 ("Other: Other: Dried or bleached") must be in a dried condition.[1] And finally, all foliage, branches, or plant parts (that are not mosses or lichens) that fall under subheading 0604.90.60 ("Other: Other: Other") must also be in a dried condition.

Given this structure, subheadings 0604.90.60 and 0604.90.30 cannot be "mutually exclusive" of each other in terms of the items being dried, and because of this overlap, the term "other" set forth in subheading 0604.90.60 must be interpreted to cover items that are both dried and undergo one of the other processes identified in heading 0604 (*i.e.*, "dyed," "impregnated" or "otherwise prepared"). Therefore, Second Nature's interpretation of the tariff is not supported by the plain meaning of the terms.

Next, Second Nature argues that subheading 0604.90.30 is an *eo nomine* provision, which "is one that names a specific product or describes by name the subject merchandise." Pl. Reply Br., 2 (citing *GRK Can., Ltd. v. United States*, 885 F.3d 1340, 1347 (Fed. Cir. 2018)). But this

---

[1] This comports with the definition of bleaching, which as relevant here and as applied to plant parts, involves drying out the tissues of plants. *See, e.g.*, Peppers Home and Garden, "Will Bleach Kill a Tree?" ("Bleach works by drying out the leaf tissue of any plant it is applied to. By pulling the moisture out of the leaves, it turns them brown and causes them to fall off…Chlorine bleach is a desiccant—it dries out plant leaf tissue."), *available at* https://peppershomeandgarden.com/bleach-kill-tree/ (last viewed on December 16, 2022).

interpretation of subheading 0604.90.30 is erroneous because the terms of that provision—
"dried or bleached"—do not name a specific product or merchandise.  Rather, the terms describe
a particular way of processing or preparing the articles in question.  Accordingly, subheading
0604.90.30 is not an *eo nomine* provision.

And even if we assumed *arguendo* that subheading 0604.90.30 could be interpreted as an
*eo nomine* provision, Second Nature's argument that the terms "dried or bleached" also cover
articles that are dyed, glittered or otherwise prepared (beyond mere drying or bleaching), *see* Pl.
Reply Br. at 3,  also fails because, as Second Nature concedes, an *eo nomine* provision covers
"an improved or advanced version of the article" *only if* the improvement or advancement does
not remove the article from the scope of the classification.  *See* Pl. Reply Br., 13 (citing *THK
America Inc. v. United States*, 837 F.Supp. 427, 434 (Ct. Int'l Trade 1993)).  Here, in a heading
addressed to "goods of a kind suitable for bouquets or for ornamental purposes," which may be
"fresh, dried, dyed, bleached, impregnated or otherwise prepared," an article of the heading (*e.g.*,
a decorative branch) that is dyed, or is covered in glitter, is materially distinct from a branch that
is only dried or bleached, because the two articles have different decorative appeal and value,
and because the heading explicitly distinguishes between articles that are dried or bleached and
those that are dyed or "otherwise prepared."  In this context, the "improvement" of dying or
glittering a branch (that is also dried or bleached) *does* remove the article from the scope of the
classification as "dried or bleached" and place it squarely into the residual "other" provision.

Second Nature argues that "[w]here an *eo nomine* provision contains limitations, it
includes all articles embraced by the language of the provision."  Pl. Reply Br., 3 (citing *United
States v. Charles R. Allen Inc.*, 37 C.C.P.A. 110, 121 *cert. denied*, 340 U.S. 818 (1950)).  But the
terms and structure of the tariff that are at issue in the present case are materially distinguishable

from *Charles R. Allen*.  Here, the Court is deciding between a subheading that describes the merchandise in whole versus a subheading that does not.  As such, the comparison to the circumstance of *Charles R. Allen* is not appropriate.

Second Nature's analysis is misguided because subheading 0604.90.30, which covers "dried or bleached" articles of heading 0604 that are other than mosses or lichens, does not describe the physical characteristics of the styles of Category One in their totality, and therefore they cannot be classified in this provision.  As we have shown, a good is classified in a tariff provision by operation of GRI 1 (which applies also at the subheading level by operation of GRI 6) when that tariff provision describes the article "in whole."  *Home Depot U.S.A., Inc.*, 915 F.3d at 1380.

Here, subheading 0604.90.30 describes only *part* of the processing performed on the merchandise of Category One—specifically, that the articles have been "dried or bleached"—and therefore does not describe the merchandise "in whole" because the merchandise is also glittered, dyed, coated, impregnated, and/or otherwise prepared.  The merchandise of Category One consists of "[f]oliage, branches and other parts of plants" that are "dried" and "dyed…or otherwise prepared."  Therefore, it cannot be classified under subheading 0604.90.30 because the terms of subheading 0604.90.30 ("dried or bleached") do not describe the physical characteristics of the goods "in whole."  *Home Depot*, 915 F.3d at 1380.

Second Nature cites *E.T. Horn*, 945 F.2d at 1544, for the proposition that once the conditions for classification in subheading 0604.90.30, HTSUS, are met, classification in the "other" provision of subheading 0604.90.60, HTSUS, is precluded.  However, Second Nature confuses the application of *E.T. Horn*, which concerned the classification of chemicals under two different competing provisions of the Tariff Schedules of the United States (TSUS), specifically

TSUS item 430.20 describing "mixtures of two or more organic compounds:…Other" and TSUS

item 793.00 describing "waste and scrap not specially provided for."  *Id.* at 1540.  The present

case is materially distinguishable from *E.T. Horn* as the competing provisions of this case

involve different subheadings under the same heading (0604), and the plain language of the tariff

shows that the basket provision of heading 0604 is intended to cover specific processes that are

identified in the heading.

Moreover, *E.T. Horn* supports classifying the articles under subheading 0604.90.60

because it highlights that differences in "further processing" can affect classification.  *See id.* at

1544 ("Customs has classified waste of a chemical nature under that item, although a notable

feature of those substances has been unsuitability for chemical use or purposes in the conditions

imported *without further processing*.") (emphasis added).  Similarly here, the further processing

of the dried articles—specifically, processing covered by the terms of heading 0604, HTSUS,

such as "dyed," "impregnated," and "otherwise prepared" which are covered by the term "Other"

of subheading 0604.90.60—transforms these styles into goods primarily described by the further

types of processing which substantially augment the aesthetic and decorative use and overall

purpose of these items to a sufficient degree that places them in a different subheading,

0604.90.60.  *See Casio, Inc. v. United States*, 73 F.3d 1095, 1098 (Fed. Cir. 1996) (explaining

that when applying the rule for whether an article is covered by an *eo nomine* provision, "[t]he

criterion is whether the item 'possess[es] features *substantially in excess* of those within the

common meaning of the term.'").  In fact, some of the styles of Category One have undergone so

much further processing that parts of them are (and appear) artificial, *see, e.g.*, fifth

representative style in Category One, "Pinecones Large Snow Item #64649," pinecones which

have been dipped in glue and rolled in synthetic foam.  *See* Joint Rule 56.3 Statement Of Material Facts ("Joint SOF", ECF 91-1), 6.

      This application of the tariff is consistent with U.S. Customs and Border Protection's (CBP) longstanding position that "advancement beyond mere drying or bleaching moves the product into the residual ('other') tariff provision," in subheading 0604.90.60, HTSUS.  *See* Def. Cross-Mot., 24.

      In our opening brief, we explained that "subheading 0604.90.30—the sole terms of which are 'dried or bleached'—does not specifically identify any commodity by name, but rather describes certain processing that may be applied to any articles covered by the heading. *Compare*, *e.g.*, subheading 0604.20.0020 (statistical suffix for 'Douglas fir,' identifying a commodity by common or commercial name), *with* subheading 0604.90.30 (providing for 'dried or bleached' articles of heading 0604 that are other than fresh and other than mosses and lichens, but not naming any commodity by common or commercial name)."  Def. Cross-Mot., 19. Second Nature criticizes the Government for using "Douglas fir" as an example because, in plaintiff's view, comparisons of tariff provisions can only be made at the same heading, subheading, or tariff item level, and "Douglas fir" is described at the statistical subheading level. Pl. Reply Br., 5.  Second Nature's response misses the point.  The distinguishing characteristics of an *eo nomine* provision are the same regardless of the tariff level, and we were using the term "Douglas fir" as an example to illustrate the nature of an *eo nomine* provision.  "Mosses and lichens," of subheading 0604.90.10, can be identified as another example of an *eo nomine* provision because these terms identify a commodity by a common or commercial name. Accordingly, subheading 0604.90.30 is not an *eo nomine* provision, and Second Nature's arguments based on *eo nomine* case law are inapposite.

Nevertheless, Second Nature's argument fails even if subheading 0604.90.30 were an *eo nomine* provision because the dying, glittering or otherwise preparing of articles beyond mere drying or bleaching *does* convert such articles into something else, something with a new decorative appeal and therefore a materially distinct article of heading 0604 than one that is merely dried or bleached.  Second Nature argues that an *eo nomine* provision includes all forms of the named article, including improved forms, and cites to *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364-65 (Fed. Cir. 2011), for support.  However, the Federal Circuit has explained that, when applying the rule for whether an article is covered by an *eo nomine* provision, "[t]he criterion is whether the item 'possess[es] features *substantially in excess* of those within the common meaning of the term.'"  *Casio*, 73 F.3d at 1098.  As discussed in our cross-motion at pages 20-21, the styles of Category One possess features substantially in excess of those within the common meaning of the terms "dried" and "bleached," such as the pinecones covered in artificial snow and impaled on sticks, whose excess features remove them from the common meaning of "dried" and place them squarely in subheading 0604.90.60 with the term "other," which encompasses any processes aside from drying and bleaching and reflect the heading terms "dying," "impregnated," and "otherwise prepared."  *See Casio*, 73 F.3d at 1098; *see also Home Depot*, 915 F.3d at 1380; *Well Luck*, 887 F.3d at 1117.

As discussed above and in our cross-motion, "where merchandise properly is classified under a particular heading but does not fall within a specific subheading, it properly is classified under the relevant heading's 'basket' or 'catch-all' provision."  *Rollerblade*, 282 F.3d at, 1354; *see also Well Luck*, 887 F.3d at 1117 (holding that, because the subject merchandise did not fall within any of the eight-digit level subheadings preceding the HTSUS subheading with the term

"other," it is properly classified under the "other" subheading) (citing to *Rollerblade*, 282 F.3d at 1354).

Second Nature argues that "[w]hen Congress seeks to put limitations on the working or processing performed to an article, it knows how to state such limitations in the tariff." Pl. Reply Br., 7. In this case, however, we must look at the structure of the tariff to discern the proper interpretation. The last several terms of heading 0604 consist of various processes that may be applied to the articles covered by the heading: "fresh, dried, dyed, bleached, impregnated or otherwise prepared." Each of these processes must be accounted for amongst the various subheadings that appear below the heading. The term "fresh" is accounted for in subheading 0604.20.00, and the terms "dried" and "bleached" are accounted for in subheading 0604.90.30. But the terms "dyed," "impregnated" and "otherwise prepared" are not explicitly accounted for in any of the subheadings. Consequently, the terms "dyed," "impregnated" and "otherwise prepared" must be accounted for under heading 0604's basket or catch-all provision, which is subheading 0604.90.60 ("Other"). If Second Nature were correct that *all* dried or bleached articles of heading 0604 other than mosses or lichens fall under subheading 0604.90.30, then the "other" provision of subheading 0604.90.60 would be rendered meaningless. Second Nature's interpretation is incorrect.

Second Nature cites the testimony of Steve Koning to argue that the invoices would show that the selling price for a colored product is the same as the selling price for a natural product (although plaintiff does not cite to any particular invoices). Pl. Reply Br., 9. This argument is not compelling, as the pricing of Second Nature's merchandise is immaterial to the terms of the competing subheadings.

12

Second Nature next argues that residual provisions are appropriate only if the merchandise is not specified or included elsewhere in the HTSUS.  Pl. Reply Br., 10.  But in this case, an article of heading 0604 that is both "dried or bleached" and "dyed…or otherwise prepared"—as all of the styles of Category One are—is not "described in whole" by the terms of subheading 0604.90.30 ("dried or bleached"), because the term "dried" only describes *in part* a dried and dyed article, as it describes its "dried" but not its "dyed…or otherwise prepared" processing.  *See* HTSUS heading 0604*, supra*; *see also Home Depot*, 915 F.3d at 1380.  Thus, because the terms of subheading 0604.90.30 ("dried or bleached") do not describe goods of Category One "in whole", those goods cannot be classified in subheading 0604.90.30.  *Home Depot*, 915 F.3d at 1380.  Therefore, these goods which are not described "in whole" by any other subheading must be classified under the "other" subheading.

As discussed in our cross-motion, in *Chemtall, Inc. v. United States*, 878 F.3d 1012, 1018 (Fed. Cir. 2017), the Federal Circuit classified subject merchandise in the residual "other" subheading after failing to find a subheading that described the merchandise—an amide derivative—in whole.  Because no other subheading described in whole an amide derivative, the Court classified it in the residual "other" subheading.  *Id.*  As in *Chemtall*, the terms of subheading 0604.90.30 ("dried or bleached") do not describe the imported goods of Category One "in whole," so those goods cannot be classified in subheading 0604.90.30.  *Home Depot*, 915 F.3d at 1380.  As such, goods which are not described "in whole" by any other subheading must be classified under the residual "other" subheading.  *Well Luck*, 887 F.3d at 1117.

Moreover, the term "otherwise prepared" of Heading 0604 covers articles not wholly described by the other terms of heading 0604 ("fresh, dried, dyed, bleached, impregnated").  The terms "fresh," "dried" and "bleached" are accounted for in subheadings 0604.20.00 ("Fresh")

13

and 0604.90.30 ("Dried or bleached").  But the terms "dyed," "impregnated" and "otherwise prepared" are not specifically accounted for in their own subheadings.

"[W]here merchandise properly is classified under a particular heading but does not fall within a specific subheading, it properly is classified under the relevant heading's 'basket' or 'catch-all' provision."  *Rollerblade*, 282 F.3d at 1354; *see also Well Luck*, 887 F.3d at 1117 (holding that, because the subject merchandise did not fall within any of the eight-digit level subheadings preceding the HTSUS subheading with the term "other", it is properly classified under the "other" subheading) (citing to *Rollerblade*, 282 F.3d at 1354).

As such, the subheading "other" describes articles of heading 0604 that are not solely "dried or bleached" but are "otherwise prepared" such as being dyed or glittered or covered in artificial snow.  Second Nature's interpretation of the tariff would render the heading term "otherwise prepared" meaningless.  Nor does Second Nature offer an interpretation of what subheading 0604.90.60 would cover, if the Court were to accept Second Nature's argument that all articles of heading 0604 that are dyed or impregnated or otherwise prepared (such as by being glittered), beyond mere drying or bleaching, fall under subheading 0604.90.30.

Second Nature cites *Victoria's Secret Direct, LLC, v. United States*, 37 C.I.T. 573, 604 fn 29 (2013) for its interpretation of the "other" basket provision at issue here.  Pl. Reply Br, 10. However, that case is inapposite.  Unlike in the present case, the provisions in *Victoria's Secret* are *eo nomine* because they refer to commodities by name (*e.g.*, wool, fine animal hair, man-made fibers); therefore, the comparison is inapt.  Moreover, as explained above and in our cross-motion, the structure of all the parts of heading 0604, including all its subdivisions, compels interpreting subheading 0604.90.60 to apply to any goods of heading 0604 that have been dyed, glittered, impregnated or otherwise prepared, unless they are fresh or are mosses or lichens.

14

Goods that have been only subjected to drying or bleaching—simple forms of processing—are properly classified in subheading 0604.90.30, duty-free.

Given all the above, a "dried" and "dyed" article of heading 0604 must be classified under the subheading whose terms describe that good "in whole." *See Home Depot*, 915 F.3d at 1380. Here, the term "other" from subheading 0604.90.60 "describes in whole" a "dried" and "dyed" (or glittered or otherwise prepared) article because that term describes any and all "other" processing and combinations of processing (beyond mere drying and bleaching).

## II. THE STYLES OF MERCHANDISE IN CATEGORY THREE—CONSISTING OF THIN FLAT STRIPS OF COLORED CALAMUS PLANT SHAPED INTO DECORATIVE CURLS—ARE APPROPRIATELY CLASSIFIED IN SUBHEADING 4602.12.45, HTSUS

The thirty-four (34) product styles in Category Three consist of thin flat strips of a plant of the *Calamus* genus[2] that are dried, dyed, and/or glittered, and shaped directly into decorative curls. Joint SOF, 9. Second Nature argues that these styles of merchandise are also classified under subheading 0604.90.30 because they are "a dried part of a botanical," ignoring the remaining GRIs and the terms of heading 4602 which more specifically describe the goods. Pl. Reply Br., 11-12.

Second Nature claims that the Government's argument is incorrect, but it does not actually address our contention that the factual description of these styles, "shaped directly into decorative curls," Joint SOF at 9, directly matches the tariff terms of heading 4602 ("other articles, made directly to shape from plaiting materials or made up from articles of heading 4601"). The Government does not argue that these articles are basketwork or wickerwork;

---

[2] *See* ITIS, Entry for Calamus  L., Taxonomic Serial No.: 500799, *available at* https://www.itis.gov/servlet/SingleRpt/SingleRpt?search_topic=TSN&search_value=500799#null.

rather, we have shown that they are other articles that are made directly to shape from plaiting materials or made up from articles of heading 4601.

The styles of merchandise in Category Three are appropriately classified in subheading 4602.12.45 because, as the description and photograph of the representative style show, *see* Joint SOF at 9-10, while these styles are "described in whole" by the terms of both heading 0604 and heading 4602, they are more specifically and accurately described by heading 4602, and are therefore properly classified in heading 4602 pursuant to GRI 3(a), which provides that when goods are *prima facie* classifiable under two or more headings, "[t]he heading which provides the most specific description shall be preferred to headings providing a more general description." *See Apple Inc. v. United States*, 964 F.3d 1087, 1094 (Fed. Cir. 2020) ("Under th[e] rule of relative specificity [provided by GRI 3(a)], we look to the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty.") (internal citations omitted).

As discussed further in our cross-motion, it is undisputed that the representative style for Category Three is "comprised of thin flat strips of dyed and glittered calamus plant *shaped directly into decorative curls*." Joint SOF, 9-10 (emphasis added). This description closely aligns with the language of heading 4602: the article is "made directly to shape" from a plant of the genus *Calamus*, the common name for which is "rattan",[3] which is a common "plaiting material" and an "article[] of heading 4601", as heading 4601 specifically includes rattan as one of its six-digit subdivisions, 4601.93.

---

[3] *See* ITIS, Entry for *Calamus L.*, Taxonomic Serial No.: 500799, cited in the parties' Joint SOF at ¶ 15 n.9, providing that the genus *Calamus L.* includes the species *Calamus rotang L.*, the common name for which is "rattan." *See also* ITIS, Entry for *Calamus rotang L.*, Taxonomic Serial No.: 506711 ("Common Name(s): rattan [English]").

Contrary to Second Nature's argument that the *Calamus* plant strips are not "other articles, made directly to shape from plaiting materials or made up from articles of heading 4601[,]" *see* Pl. Reply Br. at 13, the description and photograph of the representative style, *see* Joint SOF at 9-10, clearly show that the article *is* made directly to shape from plaiting materials ("This style is comprised of thin flat strips of dyed and glittered calamus plant shaped directly into decorative curls.") and more specifically, a plant of the *Calamus* genus, commonly known as "rattan", which is a more specific and accurate description of the article than "parts of plants…suitable for…ornamental purposes".  Second Nature argues that the styles are not made of "plaits," *see* Pl. Reply Br. at 13, but that is not the term that the drafters used for the tariff, which is "plaiting materials."  And we have shown in our cross-motion that this style is in fact made of rattan, a type of plaiting material.  Def. Cross-Mot., 27-28.  Accordingly, pursuant to GRI 3(a), these articles are properly classified under heading 4602 rather than heading 0604.

Furthermore, Second Nature has agreed that 39 subject product styles in Category Eight, the "Lata Stars," comprised of a dogbane plant of the *Apocynum* genus, which is a vegetable material other than willow or wood, with a round cross-section, plaited into the shape of a star and impaled on a wooden stick, should be classified in heading 4602 (specifically in subheading 4602.19.60).  ECF 91, 33.  Second Nature's position on the classification of the Lata Stars is inconsistent with its argument that the styles of Categories Three, Four, and Five are not properly classified under heading 4602, and instead should be classified under heading 0604, particularly given that the Lata Stars' physical composition and description closely resemble those of the styles of Categories Three, Four, and Five.  Just as the Lata Stars are properly classified in heading 4602, with which Second Nature agrees, so too are the styles of Categories Three, Four,

and Five similarly classified in heading 4602 (and not heading 0604), albeit in different subheadings thereof.

Finally, "[u]nder th[e] rule of relative specificity [provided by GRI 3(a)], we look to the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty."  *Apple*, 964 F.3d at 1094 (internal citations omitted). Heading 4602 meets this standard.  Not only does the language of heading 4602 more closely align with the description of the styles' from the parties' Joint SOF ("thin flat strips of a plant of the *Calamus* genus that are dried, dyed, and/or glittered, and shaped directly into decorative curls"), but heading 4602 includes the terms "made directly to shape from plaiting materials or made up from articles of heading 4601."  These latter terms are more specific and difficult to satisfy than the broader terms "[f]oliage, branches and other parts of plants" under 0604, which do not contain the narrower and more onerous requirement of being "made directly to shape from plaiting materials or articles of 4601".

As such, the styles of Category Three are appropriately classified under heading 4602, and as discussed further in our cross-motion, specifically in subheading 4602.12.45.

### III.   THE STYLES OF MERCHANDISE IN CATEGORY FOUR—CONSISTING OF THIN FLAT STRIPS OF COLORED WILLOW PLAITED INTO THE SHAPE OF A TRIANGLE AND IMPALED ON A STICK—ARE APPROPRIATELY CLASSIFIED IN SUBHEADING 4602.19.45, HTSUS

The four product styles in Category Four consist of thin flat strips of colored willow (genus *Salix*[4]) plaited into the shape of a triangle and impaled on a stick.  Joint SOF, 10.  Second Nature argues that these styles of merchandise are also classified under subheading 0604.90.30. Pl. Reply Br., 14.  Second Nature is misguided.

---

[4] *See* ITIS, Entry for *Salix* L., Taxonomic Serial No.: 22476, *available at* https://www.itis.gov/servlet/SingleRpt/SingleRpt?search_topic=TSN&search_value=22476#null.

Although these styles were classified at the time of liquidation under subheading 0604.90.60, HTSUS, the facts elicited during discovery show that, as with Category Three above, these styles are properly classified, pursuant to GRI 3(a), in heading 4602.  As with the merchandise of Category Three (and as with the Lata Stars of Category Eight, which Second Nature does not dispute), heading 4602 provides the most specific and accurate description for these articles.  Specifically, these styles of merchandise are appropriately classified as other "articles, made directly to shape from plaiting materials or made up from articles of heading 4601: Of vegetable materials: Other: Other: Of willow or wood: Other" under subheading 4602.19.45, HTSUS.

As the description and photograph of the representative style show, *see* Joint SOF at 10-11, these styles are "described in whole" under heading 4602 as "[b]asketwork, wickerwork and other articles, made directly to shape from plaiting materials or made up from articles of heading 4601".  *See Home Depot*, 915 F.3d at 1380.  It is undisputed that the representative style is "comprised of thin flat strips of colored *willow plaited* into the *shape* of a triangle and impaled on sticks", *see* Joint SOF, 10 (emphasis added).  This description closely aligns with the language of heading 4602: "made directly to *shape* from *plaiting* materials or made up from *articles of heading 4601*".  (emphasis added).  Further, willow is a type of "plaiting material" and an "article[] of heading 4601", as "willow" appears (twice) under heading 4601.  As such, these styles are "described in whole" by the terms of subheading 4602.19.45 ("made directly to shape from plaiting materials or made up from articles of heading 4601…Of willow or wood: Other").  *See Home Depot*, 915 F.3d at 1380.

Pursuant to GRI 3(a), heading 4602 provides a more specific and accurate description that encompasses these styles than heading 0604 because 4602 includes the terms "made directly

to shape from plaiting materials or made up from articles of heading 4601[,]" which are more specific and difficult to satisfy than the broader terms "[f]oliage, branches and other parts of plants" under 0604, which do not contain the narrower and more onerous requirement of being "made directly to shape from plaiting materials or articles of 4601."  As such, the styles of Category Four are appropriately classified under heading 4602, and as discussed further in our cross-motion, specifically in subheading 4602.19.45.

Furthermore, the above interpretation is consistent with CBP's prior rulings that classified similar articles made directly to shape from plaiting materials under heading 4602.  *See* HQ 951403 (a wreath made of natural vine plaiting); HQ 083283 (a wicker hamper); HQ H063640 (a wreath made of various materials, including plaiting materials).

## IV.  THE STYLES OF MERCHANDISE IN CATEGORY FIVE—CONSISTING OF THIN FLAT STRIPS OF PLAITED VEGETABLE MATERIALS (OTHER THAN WILLOW OR WOOD)—ARE APPROPRIATELY CLASSIFIED IN SUBHEADING 4602.19.80, HTSUS

The thirty-three (33) styles in Category Five consist of thin flat strips of vegetable materials, other than willow or wood, shaped directly into balls or other shapes, and some of which are impaled on sticks.  Joint SOF, 11.  Second Nature argues that these styles of merchandise are also classified under subheading 0604.90.30 because it claims the styles "are not 'plaited'" and instead, "the dried or bleached plant parts are wound in circular shapes so as to form an article which has the shape of a ball" and "are attached to sticks, and sold for decorative use."  Pl. Br., 18.  Second Nature again misses the mark.

Although these styles were classified at the time of liquidation under subheading 0604.90.60, HTSUS, the facts elicited during discovery show that, as with Category Three above, these styles are properly classified, pursuant to GRI 3(a), in heading 4602.  As with the merchandise of Categories Three and Four (and as with the Lata Stars of Category Eight, which

Second Nature does not dispute), heading 4602 provides the most specific and accurate description for these articles.  Specifically, these styles of merchandise are appropriately classified as other "articles, made directly to shape from plaiting materials or made up from articles of heading 4601[,]" of vegetable materials other than rattan, other than baskets, creels, bags, luggage, handbags or flatgoods, and other than wickerwork, under subheading 4602.19.80, HTSUS.

The styles of Category Five are appropriately classified in this provision because, as the descriptions and photographs of the representative style show, *see* Joint SOF at 11-12, these styles are "described in whole" by the terms of heading 4602: "articles, made directly to shape from plaiting materials or made up from articles of heading 4601."  *See Home Depot*, 915 F.3d at 1380.  It is undisputed that the representative style is "comprised of three red glittered 'Kambu' balls—themselves consisting of thin flat strips of a dogbane plant of the *Apocynum* genus which are dried, dyed, and may be glittered, and *plaited* into the *shape* of a ball", *see* Joint SOF, 11 (emphasis added).  This description aligns closely with the language of heading 4602: "made directly to *shape* from *plaiting* materials or made up from *articles of heading 4601*".  (emphasis added).  Further, there is no dispute that dogbane constitutes "plaiting material" as the parties agree that the balls are made of plaited dogbane.  Joint SOF, 11.  Moreover, dogbane is also an "article[] of heading 4601" because heading 4601 includes "vegetable materials" such as bamboo and rattan, which consists of the thin pliable stems of a palm, and dogbane is similar to rattan as it is pliable and can be plaited into shapes, as the description and photograph of the style above show.  *See* Def. Cross-Mot., 28, 37.  As such, these styles are "described in whole" by the terms of heading 4602.

Pursuant to GRI 3(a), as with the goods of Categories Three and Four above, heading 4602 provides a more specific and accurate description that encompasses the styles of Category Five than heading 0604 because 4602 includes the terms "made directly to shape from plaiting materials or made up from articles of heading 4601[,]" which are more specific and difficult to satisfy than the broader terms "[f]oliage, branches and other parts of plants" under 0604, which do not contain the narrower and more onerous requirement of being "made directly to shape from plaiting materials or articles of 4601."

Furthermore, the above interpretation is consistent with CBP's prior rulings that classified similar articles made directly to shape from plaiting materials under heading 4602. *See* HQ 951403 (a wreath made of natural vine plaiting); HQ 083283 (a wicker hamper); HQ 957995 (a basket made of plaiting material); HQ 958552 (baskets with handles made of plaiting materials); HQ H063640 (a wreath made of various materials, including plaiting materials).

As such, the styles of Category Five are appropriately classified under heading 4602, and as discussed further in our cross-motion, specifically in subheading 4602.19.80.

## V. THE STYLES OF MERCHANDISE IN CATEGORY SIX—ARTICLES HANDMADE TO RESEMBLE FLOWERS OR FRUIT—ARE APPROPRIATELY CLASSIFIED IN SUBHEADING 6702.90.65, HTSUS

The fifty-nine (59) product styles in Category Six consist of articles that are handmade, using metal wire, tape, or glue to affix various dried plant materials into shapes resembling flowers or fruit. Joint SOF, 12. Second Nature argues that these styles of merchandise are also classified under subheading 0604.90.30. Pl. Reply Br., 19. Second Nature is again misguided.

Although these styles were classified at the time of liquidation under subheading 0604.90.60, HTSUS, the facts elicited during discovery show that they are appropriately classified as "Artificial flowers, foliage and fruit", of materials other than plastics, feathers or

man-made fibers, under subheading 6702.90.65, HTSUS.  The styles in this category are *prima facie* described by both headings 0604 and 6702.  First, heading 0604 covers "Foliage, branches and other parts of plants, without flowers or flower buds, and grasses, mosses and lichens, being goods of a kind suitable for bouquets or for ornamental purposes, fresh, dried, dyed, bleached, impregnated or otherwise prepared."  The styles are described *prima facie* by this heading because the materials used to produce these decorative articles consist primarily of parts of plants and the final goods are of a kind suitable for bouquets or for ornamental purposes.  Second, heading 6702 covers "Artificial flowers, foliage and fruit and parts thereof; articles made of artificial flowers, foliage or fruit."  The styles are described *prima facie* by this heading because the articles are man-made constructions of articles made to resemble natural flowers or fruit. Because these products are *prima facie* classifiable under two headings, by operation of GRI 3(a), the heading that "provides the most specific description shall be preferred to headings providing a more general description."  "Under this rule of relative specificity, we look to the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty."  *Apple*, 964 F.3d at 1094 (internal citations omitted).

The styles in this category are more specifically and accurately described by heading 6702 rather than heading 0604, because although the articles are constructed from the type of plant materials that are described by heading 0604, the articles are more specifically described as "artificial flowers…and fruit."  As further discussed in our cross-motion at 43-44, the definition of "artificial" accurately describes these styles.  It is undisputed that these products are not actual flowers or fruit, and that instead they have been constructed, albeit using mostly (though not exclusively) natural materials, to resemble a humanly contrived flower or fruit.  Joint SOF, 12. And although these styles may generally be described as "prepared" "parts of plants" "being

goods of a kind suitable for bouquets or for ornamental purposes", *see* heading 0604, the products are much more precisely and accurately described as "artificial flowers, foliage and fruit" of heading 6702.  Also, the terms "flowers" and "fruit" refer to specific "parts of plants" and are thus more specific terms with more onerous requirements to satisfy than the more general terms of heading 0604 (and indeed heading 0604 specifically *excludes* flowers, providing for articles "without flowers or flower buds").  *See Apple*, 964 F.3d at 1094.  As such, the styles of Category Six are appropriately classified under heading 6702, and as discussed further in our cross-motion, specifically in subheading 6702.90.65.

Second Nature cites *Hub Floral Corp. v. United States*, 422 F.Supp. 283, 285 (Ct. Cust. 1976), indicating that the court "held" that the tariff provision for artificial flowers envisions flowers which are entirely artificial.  Pl. Reply Br., 19-20.  First, the citation referenced by Second Nature is not a holding, but rather an observation by the customs court.  422 F.Supp. at 285.  Second, that case is inapposite because it "involve[d] the classification of articles [under the TSUS] known as chenille stems, 12-inch lengths of flexible wire twisted around textile material in a manner which allows the textile fibers to protrude prominently," and not a provision of the HTSUS similar to heading 6702.  *Hub Floral*, 422 F.Supp. at 284.  Third, the court's central finding was that "a natural flower with an artificial stem is not an artificial flower."  *Id.* at 285.  This finding is inapplicable to the facts of this case because here, none of the styles in this category consist of natural flowers with artificial stems; in fact, none of these styles consist of natural flowers at all.  Instead, the shapes of pumpkins, berries, and flowers are created with dyed plant parts and vegetable materials that are glued and wired together.  No natural flower petals or fruit pieces have been used to create these styles.  Second Nature's interpretation would place a dried pinecone collected from the forest floor in the same tariff provision as the

artificially contrived styles that resemble flowers or fruits and have been crafted, dyed, impregnated, and otherwise prepared.  This outcome ignores the significant physical differences among these goods as well as the common meaning of the tariff terms.

Second Nature also argues that a "miniature structure resembling a pumpkin, and placed on a stick…is not an 'artificial fruit' because it would not be regarded as a fruit."  Pl. Reply Br., 21.  But this argument is irrelevant as it overlooks the other half of heading 6702, which covers "*articles made of* artificial flowers, foliage or fruit."  (emphasis added).  As such, even if we assumed for the sake of argument that a pumpkin on a stick may not be regarded as an artificial pumpkin *per se* (because it is mounted on a stick), it would certainly qualify as an "article made of" an artificial pumpkin, thereby satisfying the terms of heading 6702.

## VI.   THE STYLES OF MERCHANDISE IN CATEGORY SEVEN—COMPOSITE STYLES CONTAINING MORE THAN ONE ITEM—ARE APPROPRIATELY CLASSIFIED PURSUANT TO GRI 3(B) OR (C)

The one hundred twenty-three (123) styles in Category Seven are composite styles, meaning that they contain more than one type of item.  Joint SOF, 15.

Second Nature argues that the styles of Category Seven (all of them) are classified under subheading 0604.90.30, by application of Note 2 to Chapter 6 of the HTSUS.  Pl. Reply Br., 22.  Note 2 provides as follows:

> Any reference in heading 0603 or 0604 to goods of any kind shall be construed as including a reference to bouquets, floral baskets, wreaths and similar articles made wholly or partly of goods of that kind, account not being taken of accessories of other materials.  However, these headings do not apply to collages or similar decorative plaques of heading 9701.

Second Nature argues that Note 2 "mandates that no account shall be taken of accessories of other materials" and that "the heading 0603 or 0604, HTSUS, items present in bouquets determine the classification of those bouquets; other materials are disregarded."  Pl. Reply Br.,

22.  Second Nature further claims that the Government's argument "would disregard Chapter 6, note 2 altogether." *Id.* However, that is an incorrect description of our argument, and Second Nature's application of the note is not supported by the law.

As discussed in our cross-motion, Note 2 to Chapter 6 *must be read together with GRI 3*, which provides the legal framework for classifying composite goods.  The styles in Category Seven are all composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale (as bouquets).  These styles cannot be classified by reference to GRI 3(a) because two or more headings each refer to only part of the materials or components contained in these composite goods or to part only of the items in the set (bouquet) put up for retail sale.  Accordingly, we must consider GRI 3(b) and (c) to determine the appropriate classification for these styles.

Pursuant to GRI 3(b), such goods "shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable." Stated another way, GRI 3(b) requires the decision maker to identify the one component (amongst the various components) that imparts the "essential character" for the collection of items, and then to classify the entirety of the composite good in the provision applicable to the component that imparts the essential character.  "The essential character inquiry varies as between different kinds of goods, and may, for example, be determined by the nature of the material or component, its bulk, quantity, weight or value, or by the role of a constituent material in relation to the use of the goods."  *Apple*, 964 F.3d at 1094 (internal quotations omitted).

Note 2 to Chapter 6 *must be read together with GRI 3(b)*, such that a reference to the exemplars enumerated under the terms of heading 0604 (*e.g.*, foliage, branches, grasses, or mosses) also includes bouquets, floral baskets, or wreaths consisting in whole or in part of such

goods only if the essential character of such bouquets, floral baskets, or wreaths is imparted by

such goods, and not by goods described by other headings.[5]  Accordingly, Note 2 does *not*

obviate the need for an essential character analysis under GRI 3(b) for composite styles, when

such bouquets consist in part of components that, if imported separately, would be classified

under different tariff provisions.  In other words, Note 2 does not supersede nor negate the other

rules of statutory interpretation and classification, including the other GRIs.

Note 2 to Chapter 6 also makes clear that if articles described in headings 0603 or 0604

are combined with "accessories" made of other materials, then such accessories will not affect

the classification of the accessorized article in heading 0604.  Consequently, when a composite

style is composed of articles of headings 0604 or 0603 *together with articles of other headings*,

Note 2 to Chapter 6 does *not* operate to render all such articles of other headings mere

accessories to the articles of heading 0604 or 0603.  *See, e.g.*, *Rollerblade*, 282 F.3d at 1352

("[A]n 'accessory' must bear a direct relationship to the primary article that it accessorizes.").

The *Rollerblade* Court held that protective gear was not an accessory to rollerblades because the

"protective gear does not directly act on the roller skates at all," and "the protective gear does not

directly affect the skates' operation."  *Id.*  Similarly, articles of other headings (such as the "Lata

Star" component of "Item No. 00182, Deck The Halls Champagne Glitter–Bouquet", which the

parties agree would be properly classified in heading 4602 if imported separately, *see* Joint SOF

¶ 28) are not mere accessories to an article of heading 0604 (such as the pinecone component of

---

[5] *See also* Explanatory Note 06.04 (2012) ("This heading covers not only foliage, branches, etc., as such, but also bouquets, wreaths, floral baskets and similar articles incorporating foliage or parts of trees, shrubs, bushes or other plants, or incorporating grasses, mosses or lichens. *Provided that* such bouquets, etc., have the *essential character* of florists' wares, they remain in the heading even if they contain accessories of other materials (ribbons, wire frames, etc.).") (emphasis added).

the same item, which the parties agree is properly classified in heading 0604), because the star does not bear any relationship to the pinecone, other than being grouped together as a set for retail sale.

Instead, a GRI 3(b) analysis is necessary to determine the component that imparts the essential character of each composite style, but accessories of other materials that act directly on any component articles of headings 0604 or 0603 do not affect the classification of such individual accessorized components as articles of headings 0604 or 0603.  Thus, where a particular composite style's essential character is imparted by the component that, if imported individually, would be classified in heading 0604 (no account being taken of accessories), then the composite style itself is properly classified in heading 0604.  On the other hand, if the essential character of the composite style is imparted by a different component, and that component is *not* classified in heading 0604 (if imported individually), then the composite style is *not* classified in heading 0604, and is instead classified under the same tariff provision as the component that imparts the composite style's essential character.  As explained further in our cross-motion, discovery is necessary to determine the component of each style covered by Category Seven that imparts the essential character under GRI 3(b) for that style.  If it is determined that no one component imparts the essential character for the composite good, then the good must be classified pursuant to GRI 3(c).  Under this Rule, the good is classified in "the heading which occurs last in numerical order among those which equally merit consideration." Under this latter scenario, discovery is necessary to determine the appropriate tariff provisions for consideration under GRI 3(c).

Accordingly, we respectfully request that the Court reject plaintiff's application of Note 2 to Chapter 6 (which ignores an analysis of GRI 3), and instead enter an order that the imported

merchandise identified in Category Seven consists of composite goods that are classified in accordance with GRI 3(b) (or, if no one component imparts the essential character, GRI 3(c)) of the HTSUS, thereafter allowing for further discovery for the styles of Category Seven.

## CONCLUSION

As we have demonstrated above and in our cross-motion, subheading 0604.90.30, HTSUS, does not apply to the styles in Categories One, Three, Four, Five, and Six, and the articles in those categories are instead properly classified under different headings and subheadings. Moreover, the composite styles (Category Seven) must be classified pursuant to the framework of HTSUS GRI 3(b) or (c). For all the foregoing reasons, we respectfully request that the Court deny plaintiff's motion for summary judgment, grant our cross-motion for partial summary judgment, and order the parties to file a joint status report and a proposed scheduling order governing Phase II of the litigation within 14 days of the Court's decision.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:     /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*Of Counsel*:                                /s/ Brandon A. Kennedy
Alexandra Khrebtukova          BRANDON A. KENNEDY
Senior Attorney                         Trial Attorney
Office of the Assistant Chief Counsel     Civil Division, U.S. Dept. of Justice
International Trade Litigation      Commercial Litigation Branch
U.S. Customs and Border Protection      26 Federal Plaza, Room 346
New York, New York 10278        New York, New York 10278
                                                  Tel.: (212) 264-9230
Dated: March 15, 2023               *Attorneys for Defendant*

29

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

_____
                                                   :
SECOND NATURE DESIGNS, LTD.,                        :
                                                   :
                              Plaintiff,            :          Court No. 17-00271
                                                   :
                    v.                             :
                                                   :
UNITED STATES,                                      :
                                                   :
                              Defendant.            :
_____:

## CERTIFICATE OF COMPLIANCE

I, Brandon A. Kennedy, a Trial Attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is the attorney responsible for Defendant's Reply Memorandum In Further Support Of Its Cross-Motion For Partial Summary Judgment, relying upon the word count feature of the word processing program used to prepare the reply memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures as modified by the Court's order, ECF 128, granting a maximum limit for this memorandum of 9,200 words, and contains 8,949 words.

/s/ Brandon A. Kennedy
BRANDON A. KENNEDY